**John A. JOHNSON, Jr., Respondent,**

**v.**

**William WRIGHT, Acting Supervisor of Liquor Control of the State of Missouri, Appellant.**

**No. 56056.**

Supreme Court of Missouri, Division No. 1.

March 13, 1972.

Motion for Rehearing or to Transfer to Court En Banc Denied April 10, 1972.

Vickrey & Taylor, Caruthersville, for respondent.

John C. Danforth, Atty. Gen., Jefferson City, Raymond H. Vogel, Sp. Asst. Atty. Gen., Cape Girardeau, for appellant.

HOLMAN, Presiding Judge.

The respondent, John A. Johnson, Jr., held a license to sell intoxicating liquor in the original package at an establishment known as "The Sportster" in Caruthersville, Missouri. After notice and hearing the Supervisor of Liquor Control, on May 31, 1970, effective June 1, 1970, ordered said license revoked. Mr. Johnson filed an application seeking a review of said order by the circuit court. The matter was duly heard and the court entered a judgment to the effect that "the findings of the Director of Liquor Control herein are hereby ordered reversed because said findings are not supported by competent and substantial evidence on the whole record." The Acting Supervisor duly appealed to this court. We have appellate jurisdiction because the constitutional provision in effect at the time the appeal was

taken provided that this court have jurisdiction when "any state officer as such is a party." Art. 5, § 3, Mo.Const.1945, V.A.M.S.

The respondent was charged with violating certain statutes and regulations in substantially the following language:

"Violation I. Did purchase or otherwise acquire a quantity of intoxicating liquor from a person not licensed as a wholesaler, to wit: 12 bottles, more or less, ⅘ quart size bearing Nicholson 1843 whiskey commercial labels. § 311.280, RSMo 1969, V.A.M.S.

"Violation II. On or about January 12, 1970, did offer for sale or otherwise expose for sale a quantity of intoxicating liquor purchased or otherwise acquired from a person not licensed as a wholesaler. § 311.280, RSMo 1969.

"Violation III. On or about January 12, 1970, did fail to have all licenses and/or stamps prominently displayed in a conspicuous place. Rules and Regulations of the Supervisor of Liquor Control, 3 b.

"Violation IV. During the period of January 1, 1969, to December 31, 1969, or during a portion of said period did sell deliver or otherwise supply a quantity of intoxicating liquor to persons, knowing, or with reasonable cause to believe, that such persons were acquiring said intoxicating liquor for the purpose of reselling part or all of aforesaid intoxicating liquor. Rules and Regulations of the Supervisor of Liquor Control, 13 d."

This case is somewhat unusual in that respondent admitted the first three violations and then sought to explain how they happened to occur. He testified that one of his friends who had a case of Nicholson 1843 told him that he did not like that brand and requested that respondent take it

in trade for a case of another brand, which he did; that he never intended to sell it but that one of his clerks evidently put a price mark on two bottles and placed them on display for sale. As to the matter of failing to post licenses, it was agreed that they were not posted at the time the agent made an inspection. However, they had been obtained and were posted while the agent was present.

While the formal order of the Supervisor recited that he found the licensee "guilty as charged" (which would include all four charges) we are convinced that he did not find it necessary to consider the first three charges in arriving at his decision. It is apparent to us from a memorandum filed that he considered Violation IV to be the most serious charge and, since he found respondent guilty thereof, that was all that was required to warrant revocation of the license.

Regulation 13(d) reads as follows: "No person holding a license authorizing the sale of intoxicating liquor or nonintoxicating beer shall sell or deliver any such liquor to any person with knowledge or reasonable cause to believe that the person to whom such liquor is sold or delivered has acquired the same for purpose of peddling or reselling it."

■ There is no evidence that respondent actually had knowledge that any of his sales were to persons who acquired the liquor for the purpose of reselling it. Our task therefore is to determine whether he had reasonable cause to believe that any of it was acquired for that purpose. And we note the rule that we must accept the finding of the Supervisor if it is supported by competent substantial evidence on the whole record. State ex rel. 807, Inc. v. Saitz, Mo.Sup., 425 S.W.2d 96.

The evidence offered by the State in an effort to prove its case on the point before us included testimony of an auditor that

respondent's purchases of liquor in 1969 totaled $937,499, which we recognize is a very large volume for a retailer in a city of approximately 7,500 people. Charles Ross, an investigator for the Attorney General, visited respondent's establishment several times. He testified that he heard respondent speak of a 10-case order he had sold to a man in Mississippi, and on another occasion heard him say that "the export business on Old Crow is picking up." There was also testimony by an auditor in the Department of Revenue that respondent's sales tax reports showed that his gross sales for 1969 totaled $730,855. This evidence was admitted over objection that it was irrelevant and also inadmissible because confidential under the provisions of § 144.120, V.A.M.S. Since we are of the opinion that this evidence was irrelevant to the issue before us, we need not decide the other ground of objection.

Respondent, on cross-examination, testified as follows: "Q (by Mr. Weiler). Do you sell much liquor to out-of-state people? A. Yes, sir. Q. Quite a bit? A. Yes, sir. * * * Q. And most of them buy 10 cases at a time? A. A lot of them do. * * * Q. Don't you have a federal wholesalers license? A. Yes, sir. * * * Q. You say you do more business to out-of-staters than you to do in-staters? A. Yes, sir. Q. A lot more? A. Yes, sir. * * * Q. What's the largest order you filled, Mr. Johnson, last year? A. Well, between 20 and 30 cases, I'd say 25. * * * I don't know. * * * Mr. Weiler: I believe I asked you how many of these people were repeaters? Bought more than once? A. Well, we don't have what you call regular repeaters. We have some that come once a month, some once every two months. Q. Once every two months? The same person? A. Yes, sir. Q. Large lots everytime? 10 cases? A. It varies. Q. How much of a variance? A. Sometimes two or three cases. Q. Usual-

ly pints and half pints or do they buy other quantities? A. Buy half gallons, quarts, fifths."

We have concluded that the foregoing does not constitute substantial evidence that the respondent had reasonable cause to believe that any of his customers purchased liquor for the purpose of reselling it. We place little significance in the fact that respondent had a federal wholesale license. This for the reason that respondent made many sales of at least ten cases and, therefore, as a practical matter, was compelled by the provisions of § 5691(b), Title 26, U.S.C.A., to have such a license in order to avoid conviction for violation of the federal law. That section provides that the sale of 20 gallons of liquor (which quantity is less than ten cases of fifths) to the same person at the same time shall be presumptive evidence that the person making the sale is a wholesale dealer. The other evidence which the State relies on is that respondent is located near the "dry" or "partially dry" states of Tennessee, Arkansas, and Mississippi, and sold a large amount of liquor to purchasers from those states, often in 10-case lots and on occasion in a quantity of 25 cases. There were some repeat customers who came every month or every two months, but the amount of those repeat purchases is said to vary "sometimes two or three cases."

While the evidence the State relies on might be said to create a suspicion that respondent would have reasonable cause to believe that some of the purchases were for resale, we do not believe it may be classified as substantial evidence. The fact that many purchasers bought 10 cases or more does not prove that they had an intent to sell it. Undoubtedly many of the customers would drive from 100 to 300 miles in order to obtain the liquor. In that circumstance it is reasonable that they would get a substantial supply. Also, it is reasonable to assume that several neighbors or friends might make a combined

purchase, sending one of their number to obtain and transport it. Appellant has cited the cases of Little v. MacFarland, 206 Tenn. 665, 337 S.W.2d 233, and Eastman v. United States (8th Cir.), 153 F.2d 80, in support of his contention, but those cases are so clearly distinguishable on the facts that they do not aid him. We rule, as indicated, that Violation IV was not proved by substantial evidence.

As heretofore stated, Supervisor Wiggins entered the order of revocation on May 31, 1970, effective June 1, 1970. He resigned his office as of June 1, 1970. Respondent has advanced the contention that the order was void because, at the time it became effective, Wiggins was no longer the Supervisor. There is no merit in that contention. The authority of the Supervisor should be considered as of the time he entered the order. The case cited by respondent, State ex rel. Cosgrove v. Perkins, 139 Mo. 106, 40 S.W. 650, does not support his contention.

Although the first three violations alleged were admitted by respondent, it is obvious from the Supervisor's memorandum that he based the revocation of respondent's license upon a finding that he was guilty of alleged Violation IV. It therefore would not be just to affirm his revocation penalty because of Violations I, II, and III. We have concluded that the judgment of the trial court should be reversed and the cause remanded to the Supervisor with directions to reconsider and reassess the penalty to be imposed upon respondent, based solely on Violations I, II and III.

The judgment is reversed and cause remanded to the trial court with directions to remand same to the Supervisor of Liquor Control so that he may reconsider and reassess the penalty in accordance with the views herein expressed.

All concur.