**Edd C. CHILTON et al., Respondents,**

v.

**William WRIGHT, Acting Supervisor of the
Department of Liquor Control,
Appellant.**

**Modene GATEWOOD, d/b/a Climax Buffet,
Respondent,**

v.

**William WRIGHT, Acting Supervisor of the
Department of Liquor Control,
Appellant.**

Nos. 56057, 56058.

Supreme Court of Missouri,
Division No. 1.

May 8, 1972.

Fowlkes & Hendricks, Caruthersville, for respondent, Edd C. Chilton.

Vickrey & Taylor, Caruthersville, for respondent, Modene Gatewood.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

HIGGINS, Commissioner.

Consolidated appeals by the State Supervisor of Liquor Control from judgment reversing decisions of the Supervisor revoking licenses to sell intoxicating liquor of Edd C. Chilton and Modene Gatewood, d/b/a Eddie and Jay's and Casanova Lounge, No. 56,057, and from judgment reversing decision of the Supervisor rendering null and void the license to sell intoxicating liquor of Modene Gatewood, d/b/a Climax Buffet, No. 56,058.

Respondents Edd C. Chilton and Modene Gatewood held licenses to sell intoxicating liquor at two establishments in Caruthersville, Missouri, known as Eddie and Jay's and Casanova Lounge. On May 31, 1970, after notice and hearing, the Supervisor of Liquor Control ordered said licenses revoked, effective June 1, 1970. Both licensees sought review in the circuit court and, upon review, the court entered judgment that "The findings of the Director of Liquor Control herein are hereby ordered reversed because said findings are not supported by competent and substantial evidence on the whole record." The Acting Supervisor's appeal from this judgment bears No. 56,057.

Respondent Modene Gatewood held a license to sell intoxicating liquor at an establishment in Caruthersville, Missouri, known as Climax Buffet. On June 15, 1970, the Supervisor of Liquor Control mailed a notice to Modene Gatewood that the Supervisor "hereby takes official notice that on June 1, 1970, your partnership licenses, Edd C. Chilton and Modene Gatewood, d/b/a Casanova Lounge and Modene Gatewood and Edd C. Chilton, d/b/a Eddie

and Jay's, were revoked * * *. By reason of the aforesaid revocations the above mentioned license is * * * hereby declared null and void and cancelled." The licensee sought review in the circuit court and, upon review, the court entered judgment "that Modene Gatewood held the liquor licenses with Edd C. Chilton, doing business as the Casanova Lounge and Eddie & Jays, in a representative capacity; that any revocation or suspension of said licenses would have no force or effect to her as an individual; and that the decision of the Supervisor of Liquor Control revoking the license of Modene Gatewood, doing business as the Climax Buffett, be, and hereby is, reversed." The Acting Supervisor's appeal from this judgment bears No. 56,058.

Modene Gatewood and Edd C. Chilton, d/b/a Eddie and Jay's, were charged with the following violations:

"Violation: Unlawful selling for resale

"During the period of January 1, 1969, to December 31, 1969, or during a portion of said period, you did wrongfully and unlawfully sell, deliver, or otherwise supply a quantity of intoxicating liquor having a wholesale monetary value of about $700,000.00 to persons knowingly; or with reasonable cause to believe that said persons were acquiring said intoxicating liquor for the purpose of peddling or reselling part or all of aforesaid intoxicating liquor.

"All in violation of * * * paragraph (d), Regulation 13, Rules and Regulations of the Supervisor of Liquor Control.

"Violation: Unlawful refill containers

"On or about January 10, 1970, you did have in your possession in or about your licensed premises certain refilled intoxicating and spiritous liquor containers, in whole or in part, to wit: 1 bottle, ⅘ quart size, bearing 'Canadian Club' commercial label; and/or 1 bottle, ⅘ quart size, bearing 'Seagrams 7 Crown' commercial label * * *; and said bottles contained distilled spirits and intoxicating liquor other than that claimed by commercial labels affixed to said bottles; therefore, contents of said bottles are not genuine.

"All in violation of * * * subsection (5), Section 311.550, Revised Statutes of Missouri, 1959, V.A.M.S., as amended, and paragraph (e), and paragraph (f), Regulation 13, Rules and Regulations of the Supervisor of Liquor Control."

Edd C. Chilton and Modene Gatewood, d/b/a Casanova Lounge, were charged with "unlawful selling for resale" liquor of a value of about $380,000, in violation of Rule and Regulation 13(d).

Formal memoranda and orders filed by the Supervisor show that the license covering Eddie and Jay's was revoked on both charges and that the license covering the Casanova Lounge was revoked on the single charge of unlawful sale for resale.

Rule and Regulation 13(d) provides that "no person holding a license authorizing the retail sale of intoxicating liquor * * * shall sell or deliver any such liquor to any person with knowledge or with reasonable cause to believe, that the person to whom such liquor is sold or delivered has acquired the same for purpose of peddling or reselling it."

There is no evidence that the licensees had any knowledge that any of the liquor sales from either Eddie and Jay's or Casanova Lounge were to persons who acquired the liquor for purposes of resale. Consequently, the only question with respect to the charges of unlawful sale for resale is whether the licensees had reasonable cause to believe that any of the liquor was acquired for that purpose; and the Supervisor's finding must be accepted if it is supported by competent substantial evidence on the whole record. State ex rel. 807, Inc. v. Saitz, Mo., 425 S.W.2d 96.

The Supervisor's evidence included testimony of an auditor that the licensees' purchases of liquor in 1969 totaled $878,003.31

at Eddie and Jay's and $428,046.59 at Casanova. Also available were inventory figures for 1969 showing opening inventory of $11,327.53 and closing inventory of $16,220.54 at Eddie and Jay's, and opening inventory of $21,318.95 and closing inventory of $20,759.27 at Casanova. Income from sales and commissions for 1969 at Eddie and Jay's was $33,903.92 and $74,740.50 at Casanova. Wholesale liquor purchases for 1969 at Eddie and Jay's totaled $14,363.70, and $13,754.99 at Casanova. An agent testified that he inspected Eddie and Jay's on January 12, 1970, and observed "there were several different brands of liquor. The bulk of it was in half pints and pints. There were a few cases of fifths and quarts." This was true also of shelves behind the bar. In addition, the Supervisor took "official notice of the geographical location of Pemiscot County, within which area the licensed premises are located, and its proximity to known 'dry' states such as Arkansas, Tennessee, and Mississippi."

■ The foregoing does not constitute substantial evidence that the licensees at either establishment had reasonable cause to believe that their customers purchased liquor for purposes of resale. There was no evidence to identify any purchaser or purchasers, the amount purchased, or the purpose of any purchase. The sum of this evidence is even less substantial than that found insufficient to support the Supervisor's finding on the same charge in Johnson v. Wright, Mo., 478 S.W.2d 277.

Little v. MacFarland, 206 Tenn. 665, 337 S.W.2d 233, and Eastman v. United States, 8 Cir., 153 F.2d 80, cited by appellant, are distinguishable in that each contained something more than volume of sales upon which to found the Supervisor's inference. Johnson v. Wright, supra.

The charge of "unlawful refill containers" was laid under Section 311.550(5), RSMo.1969, V.A.M.S., which provides: "It shall be unlawful for any person to remove the contents of any container containing

* * * intoxicating liquors * * * without destroying such container, or to refill any such container, in whole or in part with any * * * liquors * * *. Any person violating * * * shall be guilty of a misdemeanor"; and Rule and Regulation 13(e) of the Supervisor of Liquor Control, which provides that "no licensee shall sell, give away or possess any spiritous liquor from, or in, any container when such intoxicating liquor is not that set out on the manufacturer's label on such container, or does not have the alcoholic content shown on the manufacturer's label."

■ In support of the charge, two agents testified that they removed fourteen bottles of liquor from Eddie and Jay's January 10, 1970. They were suspected refills because some appeared to be overfilled and some had worn strip stamps on their necks. One bottle bore a commercial label of "Canadian Club" and another the commercial label of "Seagram's 7 Crown." These two items were conveyed through the Department of Liquor Control to C. E. Deer, a chemist, in the Alcohol, Tobacco, and Firearm Laboratory in Cincinnati, Ohio. Mr. Deer was qualified, offered, and testified as an expert without objection. Based upon his personal knowledge gained from testing known quantities of Canadian Club and Seagram's 7 Crown whiskey for solids, acids, esters, and fusel oil contents, and upon tests performed to determine the amount of such qualities in the samples, he was of the opinion that the sample bottles did not contain genuine Canadian Club or Seagram's 7 Crown whiskey as such samples were represented by their commercial labels. Such was competent substantial evidence that the licensees possessed refilled bottles at Eddie and Jay's in violation of Rule and Regulation 13(e).

■ Respondent Chilton argues that such an interpretation of the regulation is harsh because it would convict a licensee of any type of defective alcoholic product even though the manufacturer alone be at

fault. Such argument has no application here because the bottles are shown to have been in a condition changed from that in which they would have been received from the manufacturer. These samples were no longer sealed and they appeared to be overfilled. He argues also that a bartender might be responsible for the dilution for purposes of pocketing additional earnings. However, the bartender would be the licensee's responsibility and his dilution or refilling would be the act of the licensee under the Liquor Control Act and the license under which respondent operated.

■ Respondent Chilton also argues that there was no showing that witness Deer used an acceptable standard. Suffice it to say that in this case Mr. Deer's method and tests were offered on the question of the content of the samples taken from Eddie and Jay's, and his qualifications and testimony were received without objection.

Respondent Gatewood argues that Regulation 13(e) is not a valid exercise of the Supervisor's rule-making authority because it does not require a showing of knowledge of the alleged refilling in the licensees. As previously observed, the license makes the licensee responsible for the licensee's employees. Regulation 13(e) is consistent with its companion statute, Section 311.550(5), supra, and with Section 311.660(6), RSMo 1969, V.A.M.S., which gives the Supervisor power to "Establish rules and regulations for the conduct of the business carried on by each specific licensee under the license, and such rules and regulations if not obeyed * * * shall be grounds for the revocation or suspension of the license."

■ Respondent Gatewood also argues that there was no chain of custody shown with respect to the tested samples. Without detailing the lengthy custody chain, it may be said from the record that the seizing agents maintained custody until they gave the samples to their supervisor, Agent Franklin, who, in turn, gave them to Chief Chemist Feeney in Cincinnati, who put them in his laboratory where they were tested by witness Deer. At his time of testing, the original marks and seals placed on the samples by the seizing agents were intact. Bean v. Riddle, Mo., 423 S.W.2d 709.

■ Respondent Gatewood also suggests that the orders entered by Supervisor Wiggins May 31, 1970, were void because he was no longer Supervisor on their effective date, June 1, 1970. This contention was adjudged without merit in Johnson v. Wright, supra, because the Supervisor's authority is determined as of the date of entry of his orders.

On the issue of Mrs. Gatewood's partnership with Mr. Chilton as a basis for revoking her separate license d/b/a Climax Buffet, No. 56,058, the following appeared:

With respect to the licenses covering Eddie and Jay's and Casanova Lounge, the Supervisor took notice of the renewal licenses for those establishments for the period July 1, 1969, to June 30, 1970, which had been changed to show Modene Gatewood substituted as co-licensee for Leo J. Gatewood, her deceased husband, who had died March 17, 1969. Applications for the licenses were accompanied by bonds executed by Modene Gatewood and Edd C. Chilton. According to Mr. Chilton, Mr. Gatewood had been the managing partner at Eddie and Jay's and Mrs. Gatewood's appearance on the licenses resulted from the administration of his estate and Modene Gatewood being his wife. The estate was involved rather than Mrs. Gatewood personally. Also present for notice by the Supervisor, with respect to the Climax Buffet license, were the revocation orders on the licenses of Edd C. Chilton and Modene Gatewood, d/b/a Eddie and Jay's and Casanova Lounge, and her application for license for the Climax Buffet. The Supervisor apparently gave superior weight to the record made by the licensees themselves showing Mrs. Gatewood as a partner of Edd C. Chilton.

In the circuit court Mrs. Gatewood introduced, and the court received, exhibits showing the First State Bank of Caruthersville as the executor of the estate of Lee J. Gatewood, Mrs. Gatewood's late husband; that Mr. Gatewood had been Mr. Chilton's partner at Eddie and Jay's and Casanova Lounge; and that the executor was given authority to wind up the partnership on March 21, 1970. In reversing the revocation of the license of Modene Gatewood, d/b/a Climax Buffet, the circuit court apparently gave superior weight to this evidence.

Appellant Supervisor emphasizes the record before him, recites Section 311.250, RSMo.1969, V.A.M.S., which provides that licenses are not transferable except in the event of death of a licensee, the Supervisor, upon application, may transfer the license to permit operation of the business for the remainder of the license period. The appellant then contends that the court erred in reversing the order rendering the license of Modene Gatewood, d/b/a Climax Buffet, null and void because she was a transferee and not acting in a representative capacity only. Respondent Modene Gatewood supports the finding of representative capacity upon which the court reversed the Supervisor's order.

It is obvious from what has been said previously with respect to the licenses of Modene Gatewood and Edd C. Chilton, d/b/a Eddie and Jay's and Casanova Lounge, No. 56,057, that finality of those revocations has not yet been reached. The order rendering the license of Modene Gatewood, d/b/a Climax Buffet, null and void depends upon revocation of the other two licenses. Accordingly, it is not necessary to render an opinion in No. 56,058 because it may or may not be a live cause depending upon the action taken upon the remand to be ordered.

For the reasons indicated, the judgment in No. 56,057 is affirmed insofar as it reversed the revocation of the license of Edd C. Chilton and Modene Gatewood, d/b/a Casanova Lounge on the single charge of "unlawful selling for resale," and insofar as it reversed the revocation of the license of Edd C. Chilton and Modene Gatewood, d/b/a Eddie and Jay's on the first charge of "unlawful selling for resale"; said judgment is reversed insofar as it reverses the revocation of the license of Edd C. Chilton and Modene Gatewood, d/b/a Eddie and Jay's, on the second charge of unlawful possession of refilled containers; and since the license of Edd C. Chilton and Modene Gatewood, d/b/a Eddie and Jay's, was revoked by the Supervisor on the strength of two violations, one of which has been found unsupported, Cause No. 56,057 is remanded to the circuit court with directions to remand it to the Supervisor with directions to reconsider and reassess the penalty, if any, to be imposed upon Edd C. Chilton and Modene Gatewood, d/b/a Eddie and Jay's, based solely on the violation of unlawful possession of refilled containers, Johnson v. Wright, supra.

And for the reason indicated, the judgment in No. 56,058 is reversed and the cause remanded with directions to remand it to the Supervisor with directions to reconsider same upon disposition of Cause No. 56,057 upon which the order in No. 56,058 depends.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.