STATE of Missouri, Appellant,

v.

Leslie A. BROWN, Respondent.

No. SC 85582.

Supreme Court of Missouri,
En Banc.

Aug. 3, 2004.

Cynthia A. Rushefsky, T. Todd Myers, Darrell L. Moore, Springfield, MO, for Appellant.

Dee Wampler, III, Thomas D. Carver, Springfield, MO, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl C. Nield, Asst. Atty. Gen., Jefferson City, MO, for Amicus Curiae.

STEPHEN N. LIMBAUGH, JR., Judge.

The State of Missouri appeals the judgment of the circuit court, dismissing an information charging Leslie A. Brown with the crime of "failure to report child abuse" under sections 210.115 and 210.165, RSMo 2000, on the ground that the statutes are unconstitutionally vague. Because there is a challenge to the validity of those statutes, this Court has jurisdiction. Mo. CONST. art. V. sec. 3. The judgment is reversed.

The charges arose from events surrounding the death of two-year-old Dominic James, who had been placed in foster care. According to the "Probable Cause Statement" accompanying the Information, on August 10, 2002, rescue personnel from the Willard, Missouri, Fire Department were summoned to the scene of an emergency where they found Dominic unconscious, not breathing, and "posturing," which is an abnormal rigidity of the body and a sign of brain damage. While performing emergency medical treatment, the rescue personnel discovered a series of "small, round, dime to quarter sized bruises running parallel along [Dominic's] spine," and they noticed a red bruise under his eye. This information was relayed to the flight crew that airlifted Dominic to Cox South Hospital in Springfield, and the flight crew then reported the information

to Ms. Brown, a nurse employed at the hospital. Dominic recovered after treatment and was released from the hospital on August 14, 2002. Four days later, on August 18, Dominic was returned to the hospital where he died of "abusive head trauma."

The probable cause statement also alleged that during an interview on November 22 with the Cox Risk Management Office, Ms. Brown admitted that she had been advised of the bruises on Dominic's back and that she had taken notes on what the paramedics told her. In addition, she admitted that she did not document the bruises in her medical report or call the child abuse hotline even though she was aware of the legal obligation to report abuse. Her explanation for failing to do so was that the foster mother said that the bruises were the result of the child leaning back on a "booster seat."

In February of 2003, Ms. Brown was charged with failure to report child abuse to the Division of Family Services under section 210.115.1 and failure to report child abuse to a physician under section 210.120. Subsequently, Ms. Brown filed a motion to dismiss asserting that the charging statutes are unconstitutionally vague. At a hearing on the motion, several witnesses were called, including Dr. Bernard Kennetz, Jr., an emergency room physician, who testified that the words "reasonable cause to suspect"—the operative words of the statute—are subject to varying interpretations. Other "experts" opined that the words "reasonable cause to suspect" rendered the statute unconstitutional, although this testimony was offered over the state's objection that the constitutionality of the statute was clearly a matter for the court's sole determination. In contrast, Barbara Schaffitzel, a retired nursing supervisor, testified that she could follow and understand the nature of the statute "as a whole" and that nurses had developed a degree of "comfort" with the statute. Then, on September 9, 2003, the trial court entered its judgment, holding that sections 210.115 and 210.120 were unconstitutionally vague and dismissing the case. This appeal follows.

Preliminarily, Ms. Brown challenges appellate jurisdiction. First, she argues that the appeal cannot stand because it is interlocutory and, as a result, is governed by section 547.200.1—the statute granting the state the right to pursue interlocutory appeals, but only in certain instances. She explains that because an appeal of a dismissal based on the unconstitutionality of a statute is not specifically listed in section 547.200.1, the state cannot appeal. She is mistaken. The state's appeal is not interlocutory; instead, there was an outright dismissal that resulted in a final judgment from which the state may appeal. Sec. 547.200.2. Second, Ms. Brown contends that the state's notice of appeal was untimely because it was filed outside of the five-day limit specified in section 547.200.4. Again, she is mistaken. Section 547.200.4 applies only to interlocutory appeals. The applicable rule, 30.01(d), specifies that a party has ten days to file notice of appeal after an order becomes final, and Brown concedes that notice was filed only six days after the trial court's judgment. Therefore, this Court has jurisdiction.

In its only point on appeal, the state argues that the trial court erred in holding that sections 210.115 and 210.120 are unconstitutionally vague in violation of the fifth and fourteenth amendments of the United States Constitution and article I, section 18, of the Missouri Constitution.

Section 210.115.1 provides that:

When any physician, . . . nurse, hospital or clinic personnel that are engaged

in the examination, care, treatment or research of persons ... or other person with responsibility for the care of children *has reasonable cause to suspect* that a child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances which would reasonably result in abuse or neglect, that person shall immediately report or cause a report to be made to the division [of family services] in accordance with the provisions of sections 210.109 to 210.183.

(emphasis added). Additionally, section 210.120 provides that persons required to report under section 210.115 "shall immediately notify the physician in charge or his designee...."

■ It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999). The void for vagueness doctrine ensures that laws give fair and adequate notice of proscribed conduct and protect against arbitrary and discriminatory enforcement. *State v. Entertainment Ventures I, Inc.,* 44 S.W.3d 383, 386 (Mo. banc 2001). The test for vagueness is "whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Cocktail Fortune,* 994 S.W.2d at 957. Nevertheless, "neither absolute certainty nor impossible standards of specificity are required in determining whether terms are impermissibly vague." *Id.*

In accordance with the aforementioned principles of law, this Court holds that sections 210.115 and 210.120 are not unconstitutionally vague. Though the trial court based its holding on the perceived vagueness of the phrase "reasonable cause to suspect," this Court holds that the phrase is readily understandable by ordinary persons. These are words of common understanding that speak for themselves and provide fair notice of the required conduct. Indeed, every other state appellate court interpreting the same or similar language in reporting statutes has reached the same conclusion. *See, e.g., White v. State,* 50 S.W.3d 31, 48 (Tex.App.2001) (holding mandatory reporting statute, which requires anyone who has "cause to believe" a child is being abused to report, is constitutional); *State v. Grover,* 437 N.W.2d 60, 63 (Minn.1989) (holding reporting statute, which requires certain people to report if he or she "knows or has reason to believe" a child is abused, constitutional); *People v. Cavaiani,* 172 Mich.App. 706, 432 N.W.2d 409, 413 (1988) (holding phrase "reasonable cause to suspect" in mandatory reporting statute constitutional); *State v. Hurd,* 400 N.W.2d 42, 42–46 (Wis.App. 1986) (holding mandatory reporting statute using the phrase "reasonable cause to suspect" constitutional). In fact, the phrase "reasonable cause to suspect" or close variations thereof have been part of Missouri law for more than a century. *See, e.g., Johnson v. Wright,* 478 S.W.2d 277, 279 (Mo.1972) (discussing Missouri's liquor control law, which requires a licensee who has "reasonable cause to believe" a buyer will resell the liquor to refrain from selling to that buyer); *State v. Bushong,* 246 S.W. 919, 920 (Mo.1922) (discussing Missouri's self-defense instruction, which asked the jury to determine if the defendant had a "reasonable cause" to believe he was going to be harmed); *Fugate v. Millar,* 109 Mo. 281, 19 S.W. 71 (Mo.1892) (elaborating on probable cause standard, which is a "reasonable ground of suspicion"). In addition, for many years the variant phrase "reasonable suspicion" has been part of the Supreme

Court's vocabulary in search and seizure cases, and the term is applied to the work of law enforcement officers on a daily basis. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 37, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As the state aptly notes, " 'reasonable suspicion' ... is not unlike ... 'reasonable cause to suspect' " as "both depend on the 'reasonable man' and his/her ability to make sensible determinations based on the facts and circumstances which confront them in a variety of critical situations."

Finally, it must be emphasized that the vagueness challenge is applicable only to the facts at hand, and it is inappropriate to project the challenge to factual situations not presented here in which the language used, as applied, might indeed be vague and confusing. *Cocktail Fortune,* 994 S.W.2d at 958. Nevertheless, Ms. Brown attempts to avoid this rule by postulating several hypothetical situations: "Does every bruise lead to the supposition that it was caused by abuse or neglect? Does the presence of a scintilla of evidence mandate a call to the child abuse hotline? Should the mandated reporter's decision to call be based on upon a preponderance of the evidence with which he or she is confronted?" While it is possible that these or similar situations may arise in the future, they have not arisen in this case. Here, according to the probable cause statement, Dominic was found unconscious, not breathing, posturing, and he had "dime to quarter sized bruises" running along his spine and a red bruise under his eye. The only explanation was that the bruises were caused by leaning back in a "booster seat." The statute is not unconstitutionally vague as applied to these facts.

The judgment is reversed, and the case is remanded.

STITH and PRICE, JJ., concur; WOLFF, J., concurs in separate opinion filed; STITH and PRICE, JJ., concur in opinion of WOLFF, J.

WHITE, C.J., dissents in separate opinion filed; TEITELMAN, J., concurs in opinion of WHITE, C.J.

MICHAEL A. WOLFF, Judge, concurring.

The facts as stated in the principal opinion are troubling. They are not, however, facts that have been proved. They are the prosecution's allegations. The record does not disclose how many health care personnel observed Dominic James' condition, nor whether any of them reported his injuries to the child abuse hot line. This raises a few questions:

1. Did the defendant nurse have information that the boy's condition had already been reported to the hot line?

2. Had other health care personnel, under a duty to report, already called the hot line?

3. Were the other personnel—including health care professionals—unaware that Dominic's condition triggered their duty to report?

4. Were the boy's injuries marginal or too subtle—despite their graphic description here—for the health care professionals to discern that a hot line report was required?

When the public may seem to be in righteous furor over the death of a helpless child who was subject to abuse, it is the duty of the courts to provide justice dispassionately.

I agree with the principal opinion that this statute, on its face, is not vague. But it must be construed and applied reasonably. That will be the trial court's obligation when this case is tried.

Not a single fact has yet been proved. The facts and circumstances, as proved at trial, may present an entirely different picture of this nurse's conduct than the allegations that are made here.

The statute is constitutional. But did Ms. Brown violate the law? That question is still very much open.

RONNIE L. WHITE, Chief Justice, dissenting.

I respectfully dissent. The words "reasonable cause to suspect," as used in section 210.115, are so broad, so undefined, and so vague, that no mandated reporter could discern a difference between an accidental childhood injury and an injury inflicted as a result of child abuse that requires reporting. Under the facts of this case, the statute failed to provide Ms. Brown sufficient warning as to the proscribed conduct and, lacking an explicit standard, applying the statute to Ms. Brown is both arbitrary and discriminatory.

A criminal statute is vague when it fails to give notice to potential offenders of the prohibited conduct, and notice is inadequate when the terms of the statute are so unclear that people of common intelligence must guess at their meaning.[1] A statute is also vague if it lacks explicit standards necessary to avoid arbitrary and discriminatory application by the state.[2] The Missouri and United States Constitutions are intolerant of vagueness when applying criminal statutes because of the relative importance of fair notice and fair enforce-

ment.[3] The possibility of criminal sanctions raises the stakes, and this Court's constitutional analysis should be sharp because the consequence of imprecision is qualitatively more severe in the criminal context.[4]

While the principal opinion is correct when stating that a vagueness challenge is only applicable to the facts at hand,[5] the opinion, in its attempt to support the constitutionality of section 210.115, curiously relies upon a number of cases from Missouri and other jurisdictions concerning different statutes employing similar terminology. All of these cases analyzed applications of statutory language that is not specifically related to, or in proper context with, the application of the wording of section 210.115 to the facts at hand. Applying the principal opinion's identified standard, these cases are irrelevant to the vagueness analysis of section 210.115.

While the underlying record of the "facts at hand" may be sparse, the police department's probable cause statement, which is part of the record, and the expert testimony elicited before the trial court are revealing. The probable cause statement recounts Officer Ronald Killinsworth's interview with Ms. Brown where she admits to being advised of the bruises on the infant when he was admitted to the hospital. In that interview, Ms. Brown also stated that she was provided with what seemed to be a satisfactory explanation from the foster mother that the child sustained the bruises from a booster seat. There is nothing in the record to indicate the age of these bruises or that

1. *State v. Callen*, 45 S.W.3d 888, 889–90 (Mo. banc 2001).

2. *Id.*

3. *State v. Lee Mechanical Contractors, Inc.*, 938 S.W.2d 269, 272 (Mo. banc 1997); *State v. Shaw*, 847 S.W.2d 768, 774 (Mo. banc 1993); *Village of Hoffman Estates*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

4. *Id.*

5. *Lee Mechanical Contractors, Inc.*, 938 S.W.2d at 271.

they were related in any way to the child's condition when the paramedics responded to the child's residence or when the child presented at the hospital. Reasonable health care practitioners might differ in their assessment of this explanation in association with the child's medical history and presenting condition, and the expert testimony presented substantiated how the "reasonable cause to suspect" language is totally ambiguous when attempting to apply it under such circumstances.

Expert testimony was elicited from former Senator Emory Melton, political science professor Dr. Alice Bartee, Ph.D., emergency room physician Dr. Bernard Kennetz, and a former director of nursing from Cox Medical Center, Barbara Schaffitzel. Senator Melton and Dr. Bartee both testified that section 210.115 was unconstitutionally vague based upon the application of the appropriate legal standards. Dr. Kennetz, as the principal opinion notes, testified that "the words 'reasonable cause to suspect'—the operative words of the statute—are subject to varying interpretations." And while the principal opinion focuses on one statement made by Nurse Scheffitzel regarding her personal comfort level with the statute as a whole, she also testified that she might not always be able to ascertain what comprises a reason to suspect abuse, that nurses could disagree on what constitutes

such a reason, and that there was no way that she, as a nurse, could comply with the "reasonable cause to suspect" wording of the law.[6]

Section 210.115 requires an affirmative act of reporting based upon a subjective and undefined standard. As the facts and evidence in this case demonstrate, attempting to prosecute Ms. Brown by applying this ambiguous law to her professional assessment and actions with regard to this child's injuries can only be accomplished by use of conjecture. The legislature failed to provide even minimal guidelines for enforcement of this statute. This failure allows police, prosecutors, and juries to pursue a totally subjective, personally biased, arbitrary and discriminatory application of this law.[7] The fear of discriminatory application is intensified when the death of an innocent child is involved.

Section 210.115 fails both constitutional tests for vagueness, and because section 210.120, requiring photographs be taken when abuse is suspected pursuant to section 210.115, is predicated on the undefined standard in section 210.115, it too fails constitutional scrutiny. I would affirm the judgment of the trial court finding sections 210.115 and 210.120 to be unconstitutionally vague.[8]

---

6. The trial court admitted into the record five additional exhibits as an offer of proof from the defendant that the language in section 210.115 was unconstitutionally vague. Those exhibits included a legal journal, a statement from the Emergency Nurses Association, a statement from the Missouri Nurses Association, a statement from four physicians from Cox Health Systems (the hospital where the alleged offense occurred), and a report from the Missouri Department of Health clearing the hospital of complaints. It should also be noted that one of the pre-hearing motions concerned the preservation and production of

a report from the Division of Family Services (DFS) who examined the child shortly after his admission to the hospital and found no reason to suspect child abuse.

7. See *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

8. The unfortunate consequence of today's holding is that all persons named in section 210.115, facing selective and arbitrary prose-

cution, will be required to report every injury sustained by any child under any circumstance. Obviously, a reasonable scenario can be imagined for absolutely any injury that a child sustains to provide "reasonable cause to suspect that a child has been or may be subjected to abuse or neglect."