**Mary Joyce WILSON, Brian Keith Wilson, John David Wilson, and April Wilson, Respondents–Appellants,**

**v.**

**C.C. SOUTHERN, INC., Appellant–Respondent,**

**and**

**Central Transport International, Inc., Nancy Farmer, Robert Kerr, and Kerr Cartage Company, Inc., Respondents.**

**No. WD 62805.**

Missouri Court of Appeals, Western District.

May 18, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2004.

Application for Transfer Denied Aug. 24, 2004.

---

Elizabeth C. Carver, Charles Bernard Jellinek, St. Louis, for Appellant.

William Ringer, Carolyn Biersmith–McCarthy, Office of Attorney General, David Bony, Kansas City, David Lunceford, Independence, for Respondent.

PAUL M. SPINDEN, Judge.

The central issue in this workers' compensation case is who was John Wilson's employer. Wilson was driving a tractor leased by C.C. Southern, Inc., from Robert Kerr pulling a C.C. Southern trailer when the rig crashed and killed him. Although C.C. Southern contracted with Kerr for Wilson's services as a driver, the Labor and Industrial Relations Commission decided that C.C. Southern was Wilson's "special employer" and liable exclusively for paying workers' compensation benefits to his survivors.

Wilson died on March 11, 1998, when the tractor-trailer rig he was driving crashed enroute from Springfield to Kansas City. Kerr owned the tractor that Wilson was driving. C.C. Southern had leased it under a contract with Kerr. Kerr and Kerr Cartage did not participate in this case, and the record does not establish what Kerr's relationships to Kerr Cartage and to Wilson were. C.C. Southern was affiliated with a freight broker, Central Transport International, Inc., which had arranged the shipment. C.C. Southern and Central Transport were wholly-owned subsidiaries of Centra, Inc.

The commission's administrative law judge awarded benefits to Wilson's widow and son, John Wilson, on the ground that Wilson was a "special employee" of C.C. Southern and was acting in the course and scope of that employment when the crash occurred. The administrative law judge also found that C.C. Southern had a reasonable basis for defending the claim and denied Wilson's dependents' request that the costs of the proceedings be assessed against it. C.C. Southern appealed to the commission, which affirmed the award without modifying it. C.C. Southern and Wilson's dependents cross-appealed. C.C. Southern asserts that the commission erred in deciding that it was liable because Wilson's general employer retained sufficient control over the details of Wilson's work to protect it from liability. Because neither Kerr nor Kerr Cartage carried workers' compensation insurance, any liability on their parts would fall to the Second Injury Fund. Wilson's survivors argue that C.C. Southern's control of Wilson's work was sufficient for it to be deemed to have assumed liability as a special employer, but, they assert, the commission miscalculated the amount of benefits.[1]

---

1. Although the appellants named Central Transport as a respondent, neither contended that the commission erred in deciding that

Central Transport was not liable, so we do not consider its liability.

■ We need not resolve the issue of whether or not C.C. Southern was Wilson's employer because C.C. Southern asserts that Wilson was an employee of its independent contractor. Assuming, *arguendo*, that C.C. Southern is correct, the result is the same because of the provisions of § 287.040.1, RSMo 2000, which says:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

In this statute, the General Assembly has created a constructive employment relationship in contravention of common law. *Montgomery v. Mine La Motte Corporation*, 304 S.W.2d 885, 888 (Mo.1957). It enacted § 287.040.1 to prevent employers from circumventing workers' compensation law by hiring independent contractors. *Bass v. National Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995), *cert. denied*, 517 U.S. 1208, 116 S.Ct. 1825, 134 L.Ed.2d 930 (1996).

■ Liability under § 287.040.1 requires coexistence of three elements: (1) that the work be performed pursuant to contract, (2) that the injury occur on or about the premises of the employer contracting for the work, and (3) that the work be performed in the usual course of business of that employer. *State ex rel. MSX International, Inc. v. Dolan*, 38 S.W.3d 427, 429 (Mo. banc 2001). All three elements are satisfied in this case.

As C.C. Southern maintains, Wilson drove the tractor pulling C.C. Southern's trailer pursuant to a contract with Kerr, satisfying the first element. C.C. Southern describes itself as "an interstate carrier ... and a common carrier of commodities in interstate traffic[.]" We, therefore, do not doubt that Wilson was performing work that was in C.C. Southern's usual course of business when the crash occurred, satisfying the third element.

Although not as straightforward, we are confident that the second element—that the injury occurred on the premises of the employer contracting for the work—was also satisfied. Wilson died in a highway crash—not at C.C. Southern's facilities—and, of course, a public highway is not the contracting employer's premises. *See, e.g., Rutherford v. Tobin Quarries, Inc.*, 336 Mo. 1171, 82 S.W.2d 918, 924 (1935); *Cole v. Town and Country Exteriors*, 837 S.W.2d 580, 585 (Mo.App.1992), *overruled in part on other grounds, Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). Premises, however, "should not be given a narrow or refined construction, but rather, in keeping with both the spirit and specific direction ... of the [workers' compensation law,] should be liberally construed and applied.... '[P]remises' as there used contemplates any place, under the exclusive control of the employer, where the employer's usual business is being carried on or conducted[.]" *Sargent v. Clements*, 337 Mo. 1127, 88 S.W.2d 174, 178 (1935); *see also, Cates v. Williamson*, 117 S.W.2d 655, 658 (Mo.App.1938) ("premises of the employer is any place where, in the usual operation of his business, it is necessary for those whom he has employed to do the work to be while doing it.") (quoting *Simpson v. New Madrid Stave Company*, 227 Mo.App. 331, 52 S.W.2d 615, 616 (1932)). An employer certainly has exclusive control of a place if the general public does not have a right to use it. *State ex rel. J.E. Jones Construction Company v. Sanders*, 875 S.W.2d 154, 158 (Mo.App.1994).

Under the required broad interpretation, C.C. Southern's premises can be mobile. *Seeley v. Anchor Fence Company,* 96 S.W.3d 809, 817–19 (Mo.App.2002), *overruled in part on other grounds, Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003) (a trailer involved in a highway crash is employer's premises, under employer's exclusive control, albeit at a temporary location away from employer's primary place of business). The tractor-trailer rig in which Wilson was killed was the means by which C.C. Southern conducted its usual business of transporting goods. C.C. Southern required Wilson to be driving the rig in fulfillment of work for which it had contracted. The general public did not have a right to use either C.C. Southern's tractor or trailer. Thus, we deem the tractor to be included in C.C. Southern's premises.

■ Because Wilson performed work for C.C. Southern under contract while on C.C. Southern's premises as part of its usual course of business, C.C. Southern was liable under § 287.040.1 for compensating Wilson's dependents. Section 287.040.4 says:

> [T]he immediate contractor or subcontractor shall be liable as an employer of the employees of his subcontractors.... The liability of the immediate employer shall be primary, and that of the others secondary in their order[.] ... No such employer shall be liable as in this section provided, if the employee was insured by

his immediate or any intermediate employer.

Assuming that Robert Kerr or Kerr Cartage were required to carry workers' compensation insurance and that their liability had priority in the ascending order of liability established by the statute, the record established that neither carried insurance. An immediate or intermediate employer, therefore, did not insure Wilson; thus, the obligation to compensate Wilson's dependents falls to C.C. Southern, which is insured and bears secondary liability as the statutory employer. *See Bunner v. Patti,* 343 Mo. 274, 121 S.W.2d 153, 155 (1938); *Sexton v. Jenkins and Associates, Inc.,* 41 S.W.3d 1, 6 (Mo.App.2000).[2]

■ Wilson's dependents, in their cross-appeal, contend that the commission erred in its determination that Wilson's average weekly wage for purposes of computing the compensation due was $450. They claim that competent and substantial evidence did not support this average and that it should be higher.

Section 287.250, RSMo 2000, governs how the compensation rate, which is based on an average of weekly earnings, is to be calculated. Its subsection 4 says:

> If pursuant to [§ 287.250] the average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of [§ 287.250], the division or the commission may determine the average weekly wage in such manner and by such method as, in the opinion of the division or the commis-

---

**2.** The commission determined that Kerr Cartage employed Wilson, but its award did not address Wilson's relationship to Robert Kerr, the company owner's son. Kerr was the named principal of the contract under which C.C. Southern obtained Wilson's services. This contract identified Kerr as C.C. Southern's independent contractor. Section 287.040.1's scope is wide. It says that the statutory employer "shall be liable under this chapter to such contractor, his subcontractors, and their employees." Wilson necessarily occupied one of these positions. If he was not an independent contractor, he was an employee of one, either Kerr or Kerr Cartage. Because the record established that neither Kerr nor Kerr Cartage carried workers' compensation insurance and because C.C. Southern bore liability, we need not address the matter further.

sion, based upon the exceptional facts presented, fairly determine such employee's average weekly wage.

Because Kerr and Kerr Cartage defaulted, and his dependents were otherwise unable to produce records of his income for each of the 13 weeks immediately preceding his death, the commission was unable to apply the applicable statutory formula, so, as authorized by § 287.250.4, it determined the average weekly wage according to evidence establishing that Wilson was a full time employee and five weeks of payroll records. Wilson's dependents do not contest the commission's reliance on this evidence. They dispute only the commission's determination.

Although the five weeks of payroll records reflected sporadic overtime hours, ranging from two hours to 19½ hours, the commission determined that it would not be fair to include overtime in its determination. It reasoned:

> The fair method of determining the deceased employee's average weekly wages would be to base such wages upon his hourly salary multiplied by 40 hours per week. The evidence including the pay stubs showed that [Wilson's] average workweek was 40 hours. He worked overtime some weeks, but because his dependents did not offer a wage statement for the 13 weeks preceding the accident, it would not be fair to include any sporadic overtime he worked in the calculation to determine his average weekly wages.

The commission's determination was supported by competent and substantial evidence and was not contrary to the overwhelming weight of the evidence. The evidence supported its determination that Wilson was employed full time, but evidence of overtime hours ranging from two to 19½ hours during a five week period is by no means sufficient to conclude that those hours must be averaged into any calculation of his weekly wage. Apparently because of limited payroll records, the commission reached the fairest determination that it could.

■ Wilson's dependents also contend that they are entitled to recover the whole costs of the proceeding from C.C. Southern because it defended the proceeding without reasonable grounds. They believe that the commission's decision denying them recovery of the costs was not supported by competent and substantial evidence and was, therefore, contrary to the overwhelming weight of evidence.

■ Section 287.560, RSMo 2000, grants the commission power to impose costs only when it "determines that any proceedings have been brought, prosecuted or defended without reasonable ground[.]" The commission should exercise this power, however, with great caution and only when the case for costs is clear and the offense egregious. *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 250 (Mo. banc 2003), *overruled in part on other grounds, Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003).

Wilson's dependents did not establish that they were entitled to recover costs. They argue that C.C. Southern did "nothing but delay the dearly needed death benefits and burial benefits . . . for the last several years with unrealistic defenses and without reasonable grounds" and that C.C. Southern knew it would be held responsible because it required Kerr to obtain workers' compensation insurance and provided that it might do so at Kerr's expense if Kerr did not do so on his own. Wilson's dependents do not refer us to anything in the record that would support the conclusion that C.C. Southern delayed or defended the claim on unreasonable grounds. C.C. Southern's liability was not clear and

beyond serious dispute. We are also not persuaded by C.C. Southern's requiring Kerr to obtain workers' compensation insurance. This does not establish that C.C. Southern knew at the outset that it would be liable for Wilson's death. The commission could have reasonably concluded that C.C. Southern merely was exercising caution to ensure that the drivers were protected so that it too might be protected in the event that it was found liable.

We, therefore, agree that C.C. Southern is liable for the benefits awarded by the commission. Because C.C. Southern is insured, the commission correctly determined that the Second Injury Fund bears no liability for compensation. It also correctly determined the amount of compensation to which Wilson's dependents are entitled.

LISA WHITE HARDWICK, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.