David MARTINEZ, Claimant–
Appellant,

v.

NATIONWIDE PAPER, Employer–
Respondent,

and

International Paper Co., Insurer–
Respondent.

No. 26261.

Missouri Court of Appeals,
Southern District,
Division One.

May 18, 2005.

Application for Transfer Denied
June 9, 2005.

Randy Charles Alberhasky, The Alberhasky Law Firm, Springfield, MO, for appellant.

J. Sean Dumm, Bart E. Eisfelder, Foland, Wickens, Eisfelder, Roper & Hofer, P.C., Kansas City, MO, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

David Martinez ("Appellant") appeals from the final award of the Labor and Industrial Relations Commission ("Commission") denying compensation for an injury suffered on the premises of Nationwide Paper ("Respondent").[1] We reverse and remand for further proceedings.

Respondent utilized a warehouse in Springfield, Missouri for its business as a regional distributor of paper products. Appellant's claim arises from an injury sustained at that warehouse as he was

---

1. Nationwide Paper was purchased by XPEDX, a wholly owned subsidiary of International Paper, after Appellant's injury. At the time of this claim, Nationwide Paper was the alleged employer and International Paper was shown as the insurer. We refer to "Respondent" as encompassing all for purposes of clarity.

unloading products being delivered to Respondent from one of its suppliers. Appellant claims that Respondent's liability is as a statutory employer. His claim was initially heard and denied by an administrative law judge ("ALJ"). Thereafter, on review, the Commission affirmed the ALJ's award, incorporated it into the final award denying compensation, and found that it was supported by competent and substantial evidence. This appeal followed.

On appellate review of an award by the Commission,

[a] court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence. Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.

*Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003) (citations omitted). "In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ," unless the Commission incorporates the ALJ's award and decisions, in which event we consider the findings and conclusions of the Commission as including the ALJ's award. *Loven v. Greene County*, 63 S.W.3d 278, 282 (Mo.App. S.D.2001).[2] On appeal, "in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and

binding." Section 287.495.1.[3] We defer to the Commission on credibility issues and the weight given to conflicting evidence, but we independently review questions of law without deference to the Commission's findings. *Henley v. Tan Co., Inc.*, 140 S.W.3d 195, 198 (Mo.App. S.D.2004). "Whether a workers' compensation claimant is an employee is a question of law, not a finding of fact, and is subject to correction by an appellate court." *Chouteau v. Netco Const.*, 132 S.W.3d 328, 332 (Mo. App. W.D.2004).

Section 287.040.1 provides:

[a]ny person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

The General Assembly adopted Section 287.040 to prevent employers from circumventing the requirements of the Workers' Compensation Act by hiring independent contractors to perform work the employer would otherwise perform. *Bass v. Nat'l Super Markets, Inc.*, 911 S.W.2d 617, 619 (Mo. banc 1995). The statute clearly provides that "statutory employment exists when three elements co-exist: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer." *Id.* at 619–620.

---

2. *Loven* was overruled, in part, by *Hampton* as to the appropriate standard of review. *See Hampton*, 121 S.W.3d at 225. *Hampton* did not disturb the principle for which we cite *Loven*.

3. All statutory references are to RSMo (2000) unless otherwise indicated.

Here, the ALJ made the following findings of fact, among others:

[Respondent's] distribution center would have products delivered to the warehouse. The suppliers they bought from would contract with a number of trucking companies to deliver the products to [Respondent]. When the products arrived the truck driver was responsible for unloading the merchandise at the loading dock. These truck drivers would hire "lumpers" to unload the trucks for a fee. Steve McPhetridge, [sic] was the warehouse manager for [Respondent] at the time of the alleged injury in May 1999. He testified that the truck drivers were responsible for unloading the trucks and that any lumpers that were hired were hired and paid by the individual drivers. [Respondent] never hired or paid any of the lumpers.

[Appellant] had begun lumping at the [Respondent's] warehouse as well as other locations several weeks before the accident. His friend and fellow lumper Joe Hart contacted the claimant. Mr. Hart would receive calls from someone saying that there was a truck at [Respondent's] that needed unloading. [Appellant] did not know who called Mr. Hart. He would immediately go down to the warehouse and negotiate a price with the truck driver to unload the goods. Once the goods were unloaded the truck driver would pay him. The truck driver would usually call his company and get approval to do this in advance of hiring the lumpers. Often, the company would send a comcheck made out directly to Mr. Hart and [Appellant]. . . .

On May 26, 1999, [Appellant] went to [Respondent's] by himself as Mr. Hart could not go that day. A driver for U.S. Express, a common carrier, hired him. The truck driver had to call U.S. Express for authority before hiring him. [Appellant] was hired and began unloading the truck. [Appellant] was allowed to use a [Respondent] pallet jack to use [sic]. A worker at [Respondent] would show him where to put the product on the dock. During the process of one trip with the pallet jack [Appellant] was backing up and felt himself hit something. He stepped to the left and his right foot got stuck on another jack. He could not stop and his foot became caught between the two jacks. . . .

Susan Antrim, . . . the custodian of records for [Respondent] testified that [Appellant] was not listed on any payroll record for [Respondent]. She said lumpers would not be on their payroll records. She said that they would hire companies, rather than individuals, to deliver goods to the warehouse. These independent drivers would be responsible for unloading the truck or hiring a lumper if they did not want to unload the truck.

With reference to whether Appellant was a statutory employee of Respondent, the ALJ found, in her conclusions of law:

While [Appellant] was working under contract of U.S. Express as a lumper, and could possible be a statutory employee of the trucking company for which he was unloading the product, he was not under any contract with [Respondent]. I do not find he was a statutory employee of [Respondent].

For the reasons that follow, we reverse and remand.

It appears from the ALJ's conclusions of law that the lack of liability of Respondent as a statutory employer was determined based on the fact that there was no direct contract between itself and Appellant. As further support for this inference, we note the absence of any mention in the findings

of fact or conclusions of law about whether the work being done by Appellant was or was not work that was in the usual course of Respondent's business, one of the elements of statutory employment.

■■■ A direct contractual relationship between the injured employee and a statutory employer is not required by Section 287.040.1. *See Wilson v. C.C. Southern, Inc.*, 140 S.W.3d 115, 118 (Mo.App. W.D. 2004) (there was no direct contractual relationship between a statutory employee/truck driver and the statutory employer which leased the truck, along with the driver, from the owner). The fact that statutory employment may exist in the absence of a direct contractual relationship between the injured employee and a statutory employer is also clear by the provisions of Section 287.040.4, which provides, in pertinent part:

> In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employees of his subcontractors. All persons so liable may be made parties to the proceedings on the application of any party. The liability of the immediate employer shall be primary, and that of the others secondary in their order, and any compensation paid by those secondarily liable may be recovered from those primarily liable, ... No such employer shall be liable as in this section provided, if the employee was insured by his immediate or intermediate employer.

"Under this subsection, all contractors or subcontractors are liable under the Workers' Compensation Act to all employees immediately or remotely under it." *Chouteau*, 132 S.W.3d at 335.

■■■ We also note some confusion arising from the findings of fact in this case. The Commission found both that the suppliers of the products would contract with the trucking companies delivering the products and it was the responsibility of the truck driver to unload the truck; and also found that Susan Antrim said that "they would hire companies, rather than individuals, to deliver goods to the warehouse." The ALJ was not clear, with reference to the latter findings, whether "they" referred to the supplier of the products or Respondent. As her testimony was summarized by the ALJ, Ms. Antrim was testifying about Respondent's payroll records when she said "they" would hire companies, thus indicating that it was Respondent she was referring to. Viewed in that fashion, the finding could be interpreted as concluding that Respondent hired the trucking companies to deliver the product. A review of the record demonstrates that Ms. Antrim, in testifying about Respondent's practice of sometimes hiring independent contractors to deliver products from its warehouse to customers, gave the following testimony:

Q. You are contracting these companies to come and pick up supplies—

A. Right.

Q. —and take them—or to bring them supplies to you?

A. That is my understanding.

Consequently, we are unable to determine from the findings of fact whether the ALJ found that Respondent did or did not hire carriers to bring the product to its warehouse from suppliers.

■■■ Section 287.460.1 requires that an award be accompanied by findings of fact and rulings of law. In doing so, the Commission should make a sufficient finding to show whether the basis of their decision was an issue of fact or a question of law. *Michler v. Krey Packing Co.*, 363 Mo. 707, 253 S.W.2d 136, 142 (Mo. banc 1952). "We must know what a decision means before

the duty becomes ours to say whether it is right or wrong." *Id.* at 143.

To the extent the Commission's award denied Appellant's claim of statutory employment with Respondent based on the lack of a direct contractual relationship between the two, it was a misapplication of the law. Because the Commission's findings were not sufficient to permit us to determine what it found with reference to the elements of statutory employment, the award must be reversed and the matter remanded to the Commission for further proceedings not inconsistent with this opinion.

PREWITT, J., and RAHMEYER, J., concur.