**STATE ex rel. William A. ZOBEL, Relator,**

v.

**The Honorable Don E. BURRELL, Judge of The Circuit Court of Greene County, Missouri, et al., Respondents.**

**No. SC 86813.**

Supreme Court of Missouri, En Banc.

July 12, 2005.

---

Dale L. Ingram, Kansas City, MO, Pat J. Merriman, Nixa, MO, Price C. Keller, Republic, MO, for Relator.

J. Daniel Patterson, Darrell L. Moore, Greene County Prosecuting Attorney, Springfield, MO, Ann K. Covington, St. Louis, MO, for Respondents.

RICHARD B. TEITELMAN, Judge.

In January 2005, the Greene County sheriff's department executed a search warrant on property owned by William Zobel. The warrant was issued pursuant to section 578.018 RSMo (2000). Sheriff's deputies seized approximately 120 severely malnourished and emaciated horses from the property.[1] The horses were impounded and cared for by the Humane Society of Missouri and the Carthage Humane Society at a cost of over $180,000. In March 2005, the Honorable Don E. Burrell (respondent), entered an order which, *inter alia,* granted permission to the societies to humanely dispose of the horses pursuant to section 578.018. However, Zobel never

---

1. The extent of the malnourishment and mistreatment is reflected in the attached photographs of several horses seized from Zobel's property. The Court takes judicial notice of these photographs, contained in *State ex rel.* *William A. Zobel v. The Honorable Don E. Burrell, Jack Merritt, Sheriff of Greene County, Missouri, the Humane Society of Missouri, Inc., and The Honorable Gloria C. Reno, No. SC86677.*

attempted to prevent the disposition of the horses by posting a bond or security for the care of some or all of the horses as is authorized by section 578.108.2. Instead, Zobel filed a petition for a writ of mandamus against respondent and the societies, arguing that respondent had no authority to authorize a disposition of the horses. The court of appeals issued a stop order. After opinion by the court of appeals, this Court ordered transfer. Mo. Const. article V, section 10. The stop order is dissolved and the petition is denied.

Section 578.018 establishes procedures regulating the search for and seizure of animals suspected of being abused and neglected. The statute specifically authorizes warrants to "enter private property in order to inspect, care for, or impound neglected or abused animals." Section 578.018. If animals are seized, the statute provides that a person acting under authority of a warrant shall "be given a disposition hearing before the court through which the warrant was issued, within thirty days of the filing of the request for the purpose of granting immediate disposition of the animals impounded." Any person acting under the authority of a section 578.018 warrant shall "[p]lace [the] impounded animals in the care or custody of a veterinarian, the appropriate animal control authority, or an animal shelter." Section 578.018.1(2). The statute allows the owner of the allegedly abused or neglected animal to prevent disposition of the

animal by "posting bond or security in an amount sufficient to provide for the animal's care and keeping for at least thirty days...." Section 578.018.2. However, even if a bond is posted, "the authority having custody of the animal may humanely dispose of the animal at the end of the time for which expenses are covered by the bond or security." *Id.*

■ Zobel raises two points before this Court.[2] First, Zobel argues that respondent was without jurisdiction to order disposition of the horses because the order constitutes spoliation of evidence and will cause irreparable harm by adversely affecting his ability to defend himself against pending criminal animal abuse charges. Zobel's second point is that section 578.018 is unconstitutionally vague and violates equal protection.

## I. *Spoliation of Evidence*

■ " 'Spoliation is the destruction or significant alteration of evidence.' " *Schneider v. G. Guilliams, Inc.,* 976 S.W.2d 522, 526 (Mo.App.1998)(quoting *Baugher v. Gates Rubber Co.,* 863 S.W.2d 905, 907 (Mo.App.1993)). A party who intentionally destroys or significantly alters evidence is subject to an adverse evidentiary inference under the spoliation of evidence doctrine. *Baldridge v. Director of Revenue,* 82 S.W.3d 212, 222 (Mo.App. 2002). Whether the spoliation doctrine would apply in future criminal proceedings

**2.** Zobel's argument in the circuit court and the court of appeals was that section 578.018 did not vest the circuit court with jurisdiction to order disposition of the horses. Inexplicably, Zobel has abandoned the jurisdictional argument in his briefs before this Court and, instead, presents this Court with two fundamentally different points. Arguably, Zobel's brief could be stricken under Rule 83.08(b), which provides that the substitute brief before this Court "shall not alter the basis of any claim that was raised in the court of appeals brief" and that any material "in the court of

appeals brief that is not included in the substitute brief is abandoned." However, the matter was expedited in the court of appeals and the parties were not permitted to file briefs and, instead, proceeded on their initial pleadings. While this unique situation may save Zobel's points on appeal from the application of Rule 83.08(b), the decision to abandon the arguments presented to the circuit court and the court of appeals nonetheless runs afoul of the premise of orderly litigation that underlies the rule.

against Zobel is a matter that would be determined by the circuit court hearing that case. The spoliation of evidence doctrine does not apply at this juncture to warrant an extraordinary writ.

## II. Constitutionality of section 578.018

Zobel argues that section 578.018 is unconstitutional because the statute is "unduly vague in that it fails to provide sufficient guidance to avoid arbitrary and discriminatory application thereby denying relator the equal protection of the law." As the party challenging the constitutionality of the statute, Zobel bears the burden of proving the statute unconstitutional. *Linton v. Missouri Veterinary Medical Bd.*, 988 S.W.2d 513, 515 (Mo. banc 1999). Zobel must overcome the presumption of constitutionality by showing that the statute "clearly and undoubtedly" violates some constitutional provision and "palpably affronts fundamental law embodied in the constitution." *Id.*

Zobel's first vagueness challenge centers on his contention that the statute does not adequately define the circumstances in which animals may be taken from the possession of an owner. Zobel maintains that animal "abuse" and "neglect" are vague terms that do not adequately define the proscribed conduct. However, the terms "animal neglect" and "animal abuse" are defined in section 578.009 and section 578.012. "Animal neglect" is defined as the failure "to provide adequate care or adequate control, which results in substantial harm to the animal." Section 578.009. Animal abuse occurs when an owner "knowingly fails to provide adequate care or control." Section 578.012. Furthermore, the general assembly has also defined the key terms of "adequate care" and "adequate control." "Adequate care" is defined as "normal and prudent attention to the needs of an animal, including wholesome food, clean wa-

ter, shelter and health care necessary to maintain good health in a specific species of animal." Section 578.005. "Adequate control" means to "reasonably restrain or govern an animal so that the animal does not injure itself, any person, any other animal, or property." *Id.*

"The test for vagueness is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *State v. Brown*, 140 S.W.3d 51 (Mo. banc 2004). Neither absolute certainty nor impossible standards of specificity are required in determining whether terms are impermissibly vague. *Id.* Assessed against these standards, the statutory definitions of "animal abuse" and "animal neglect" are not void for vagueness. The terms "animal neglect" and "animal abuse" are both premised upon the failure to provide "adequate care" or "adequate control." The terms "adequate care" and "adequate control" are defined with reference to the basic needs of an animal for food, water, shelter, and restraint from injuring itself, other animals, people, or property. The need for basic food, water and shelter are concepts that are almost universally contemplated and are understandable by persons of ordinary intelligence. The terms "animal abuse" and "animal neglect" as used in section 578.018 are not void for vagueness.

Zobel's second vagueness argument is that section 578.018 "lacks sufficient guidance so as to avoid arbitrary and discriminatory application." As discussed above, the statute employs the sufficiently clear terms of "animal abuse" and "animal neglect" to justify impoundment, requires a hearing for immediate disposition of the animals, and permits an owner to prevent the disposition of an impounded animal. What the statute does is grant the circuit courts the discretion necessary to evaluate

the innumerable scenarios under which an animal abuse or neglect case may arise. Section 578.018 provides the circuit courts with sufficient guidance to avoid arbitrary and discriminatory application and is not void on that basis.

Zobel's equal protection argument is also without merit. In an equal protection challenge, the first step is to determine whether the challenged statutory classification operates to the disadvantage of some suspect class. *United C.O.D. v. State,* 150 S.W.3d 311, 313 (Mo. banc 2004). Zobel does not allege that section 578.018 discriminates based upon a classification nor does he allege that the statute discriminates in its application. Section 578.018 applies to all persons equally without regard to classification and, therefore, does not violate the guarantee of equal protection.

Respondent acted within his jurisdiction in ordering the disposition of the horses pursuant to section 578.018. The stop order is dissolved and the writ petition is denied.

All concur.

Humane Society 011

Humane Society 04-1226 Wm Zobel case

Humane Society   04-1226