**In re: 8 HORSES and 22 DOGS.**

**No. SD 29156.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 5, 2009.

John M. Albright, Moore, Walsh & Albright L.L.P., Poplar Bluff, for Appellants.

Christopher J. Wynes, Caruthersville, for Respondent.

**DANIEL E. SCOTT, Chief Judge.**

Jeff and Cynthia Ferrell appeal from a judgment awarding custody of their horses and dogs to the Humane Society "for disposition as it determines necessary" pursuant to RSMo § 578.018 (2000), a well-intentioned law so poorly drawn[1] that it raises more questions than it answers and gives inadequate guidance to nearly everyone affected thereby. Issues raised by the statutory text underlie all six appeal points here, and will yet plague animal owners, custodians, law enforcement officers, animal health officials, lawyers, and courts until they are resolved by judicial interpretation or, preferably, legislative action. The General Assembly would perform a valuable service by redrafting this law.

## Facts and Background

One Thursday afternoon, Pemiscot County authorities obtained two § 578.018 search warrants for allegedly abused and/or neglected animals. They executed the warrants the next day, impounding 23 dogs[2] from the Ferrells' home and eight horses from a farm. That Friday afternoon, the Ferrells learned of the seizures

---

1. The statute reads as follows:

   **578.018. Warrant for entry on private property to inspect—impounded animals—compensation**

   1. Any duly authorized public health official or law enforcement official may seek a warrant from the appropriate court to enable him to enter private property in order to inspect, care for, or impound neglected or abused animals. All requests for such warrants shall be accompanied by an affidavit stating the probable cause to believe a violation of sections 578.005 to 578.023 has occurred. A person acting under the authority of a warrant shall:

   (1) Be given a disposition hearing before the court through which the warrant was issued, within thirty days of the filing of the request for the purpose of granting immediate disposition of the animals impounded;

   (2) Place impounded animals in the care or custody of a veterinarian, the appropriate animal control authority, or an animal shelter. If no appropriate veterinarian, animal control authority, or animal shelter is available, the animal shall not be impounded unless it is diseased or disabled beyond recovery for any useful purpose;

   (3) Humanely kill any animal impounded if it is determined by a licensed veterinarian that the animal is diseased or disabled beyond recovery for any useful purpose;

   (4) Not be liable for any necessary damage to property while acting under such warrant.

   2. The owner or custodian or any person claiming an interest in any animal that has been impounded because of neglect or abuse may prevent disposition of the animal by posting bond or security in an amount sufficient to provide for the animal's care and keeping for at least thirty days, inclusive of the date on which the animal was taken into custody. Notwithstanding the fact that bond may be posted pursuant to this subsection, the authority having custody of the animal may humanely dispose of the animal at the end of the time for which expenses are covered by the bond or security, unless there is a court order prohibiting such disposition. Such order shall provide for a bond or other security in the amount necessary to protect the authority having custody of the animal from any cost of the care, keeping or disposal of the animal. The authority taking custody of an animal shall give notice of the provisions of this section by posting a copy of this section at the place where the animal was taken into custody or by delivering it to a person residing on the property.

   3. The owner or custodian of any animal humanely killed pursuant to this section shall not be entitled to recover any damages related to nor the actual value of the animal if the animal was found by a licensed veterinarian to be diseased or disabled, or if the owner or custodian failed to post bond or security for the care, keeping and disposition of the animal after being notified of impoundment.

2. One dog died after it was impounded.

and of a Tuesday morning hearing—some 12 business hours later—to "determine the immediate disposition" of their animals.

The Ferrells came to court Tuesday and asked the judge not to proceed because their lawyer could not be there. After calling the lawyer's office and getting an answering machine, the court decided to go ahead because "this hearing is something that the statute refers to—subsection 1 says the purpose of granting immediate disposition of the animals impounded. And the Court believes that the immediate disposition of the animals is an important thing to take care of." The court said it would set a bond that the Ferrells could post to prevent immediate disposition, and warned them of their right to remain silent and that anything they said could be used against them in future proceedings.

An assistant prosecutor called two witnesses: a deputy who primarily described executing the warrants and seizing the animals, and the local Humane Society president who focused on care and boarding costs. The Ferrells asked no questions. The court entered judgment granting care and custody of the animals to the Humane Society[3] "with the full authority available to them [sic] pursuant to section 578.018 and any other applicable Missouri state laws," and set bond at $20,000 to provide for the animals' care and keeping for at least thirty days.[4]

We need not reach the Ferrells' constitutional complaints about this judgment and § 578.018, as their challenge to the sufficiency of the evidence is well-taken.

### Sufficiency of Evidence

The trial court stated that the hearing was to determine the immediate disposition of the animals and to set a bond that the Ferrells could post to prevent disposition. Chapter 578 does not define "disposition," but in the context of § 578.018, "dispose" and "disposition" are not directed or limited to the initial placement of impounded animals. See § 578.018.1, .2, .3. The trial court seemed to focus on what to do with the animals immediately, not necessarily permanently. Yet by statute, its judgment could lead to the animals' death or other disposition in 30 days if the Ferrells put up $20,000—and earlier if they did not—with no further hearing, court order, or recourse by the Ferrells.

The statutory predicate for such strong action is a finding of abuse or neglect. The judgment did not expressly find either,[5] yet the State argues that the animals "at least suffered from a lack of adequate care, resulting in substantial harm ... and thus had experienced abuse or neglect," citing §§ 578.009.1,[6] 578.012.1(3),[7] 578.005(1),[8] and *State ex rel.*

---

3. The judgment refers to "the Humane Society of the State of Missouri," but at the hearing, the trial court mentioned only the "Caruthersville Humane Society," which erroneously was listed as the respondent here. A Pemiscot County prosecutor handled both the hearing below and this appeal.

4. Before concluding the hearing, the court told the Ferrells that if their attorney needed to contact the court, "just give him my phone number and have him feel free to give me a call."

5. The judgment stated that "the animals were properly seized by the authority of the search warrant" and "good cause exists" to award their custody to the Humane Society.

6. Defining "animal neglect" as failure "to provide adequate care ... which results in substantial harm" to one's animal.

7. Defining "animal abuse" as a knowing failure "to provide adequate care" for one's animal.

8. Defining "adequate care" as "normal and prudent attention" to an animal's needs, "in-

*Zobel v. Burrell,* 167 S.W.3d 688 (Mo. banc 2005). As proof, the State primarily notes the probable cause affidavits and photos used to obtain the search warrants. Yet these were not admitted into evidence or judicially noticed at the hearing, and no witness related their content, so they were not part of the hearing record and we cannot consider them.

At the hearing, there was lay testimony that "some" horses looked malnourished "as far as their ribcage and their hips;" that a veterinarian ordered special horse food "because of their stomach conditions and some of the wood—from chipping the wood and eating the wood;" and that one horse had congestive heart failure. There also was lay opinion that many dogs had skin conditions; a passing reference to "antibiotics and eye treatments;" and testimony about feces "throughout" the Ferrells' home when the dogs were seized. On the issue of bond, there was non-specific testimony about several thousand dollars for past and future medical expense, some of which was not for treatment, but for tests and state-mandated vaccinations for all of the animals.

Such evidence, even viewed most favorably to the judgment, does not prove abuse or neglect triggering the statutory right to kill or otherwise dispose of the Ferrells' animals, potentially without further notice, hearing, or recourse. Heart, skin, or stomach conditions often (perhaps usually) are unrelated to abuse/neglect; the same can be said for needing antibiotics, eye treatments, or similar care. Proper testimony might have connected these with abuse/neglect, but no veterinarian testified at the hearing and the State laid no foundation to establish either witness as an expert.[9] Thus, one is left to speculate

whether a horse that gnaws on wood necessarily is abused or neglected, and to evaluate the testimony about feces "throughout" the Ferrells' residence, or that "some" of the horses looked malnourished to one lay witness.

The State apparently had and might have offered more evidence, and perhaps thereby proved abuse or neglect, but it did not do so and thus did not establish a statutory predicate for the judgment. The Ferrells seek reversal and remand on this point, which is the preferred course in this situation. *McClain v. Kelley,* 247 S.W.3d 19, 22 (Mo.App.2008). We need not reach the constitutional claims and the other issues may not recur on retrial. We reverse the judgment and remand the case for further proceedings consistent herewith.

LYNCH, P.J., and RAHMEYER, J., concur.

---

cluding wholesome food, clean water, shelter and health care as necessary to maintain good health" in a specific species.

9. We are not suggesting that abuse or neglect always requires expert proof.