Dennis CARVER, Appellant,

v.

DELTA INNOVATIVE SERVICES; American Home Assurance Co. and Treasurer of the State of Missouri—Custodian of the Second Injury Fund, Respondents.

Nos. WD 74266, WD 74271.

Missouri Court of Appeals, Western District.

Sept. 11, 2012.

Mark E. Kelly and Kristi L. Pittman, Liberty, MO, for appellant.

John D. Jurcyk, Kansas City, KS and Andrew J. Dickson, Kansas City, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and JAMES E. WELSH and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Dennis Carver was injured in October 2007 while working as a roofer for Delta Innovative Services. Carver filed a workers' compensation claim concerning his injuries. He appeals the Labor and Industrial Commission's Final Award Allowing Compensation, which awarded Carver compensation for a permanent total dis-

ability, but reduced his award by 50% pursuant to § 287.120.5,[1] based on the Commission's determination that Carver's injury was caused by his failure to obey his employer's safety rules. Because the Commission's findings of fact are inadequate to enable us to meaningfully review the issues Carver raises on appeal, we reverse the Commission's Final Award, and remand the case to the Commission for further findings.

## Factual Background

Carver had worked as a roofer at Delta for approximately three years when he was injured on October 1, 2007. Delta had been retained as a roofing subcontractor by J.E. Dunn Construction Company, the general contractor on the construction of the new Federal Reserve Bank building in Kansas City. Carver suffered a back injury while carrying a 100–pound roll of composite weather barrier roofing material up a ladder. Carver testified that he felt immediate pain in his back and leg while carrying the load up the ladder; the pain increased significantly the next day.

Generally, Delta had a crew of eleven roofers working on the job site; on the date of the injury, however, only Carver and his co-worker, Jeremy Reno, were present. Carver was serving as foreman. Reno was working in a separate area of the project at the time of Carver's injury.

Delta argued that Carver caused his own injury by failing to follow its "three-point" safety rule while climbing a ladder. As a general matter, the three-point rule requires that workers continuously maintain three points of contact with a ladder at all times; Delta contends that its three-point rule prohibits workers from carrying items while climbing a ladder. Instead, roofers are supposed to use a hand pulley or power equipment, or request the assistance of a co-worker, to lift materials to the top of the ladder.

An administrative law judge held a hearing on Carver's workers' compensation claim in September 2010. The ALJ awarded Carver $64,720.62 for his temporary and total disability, $63,859.05 for past medical costs, and $742.72 per week for permanent total disability continuing for the remainder of Carver's life. The ALJ also assessed a 50% reduction to Carver's award pursuant to § 287.120.5, based on her finding that Carver's injury was caused by his failure to follow his employer's three-point safety rule. The Commission amended the ALJ's decision in part, but affirmed the portion of the ALJ's award imposing the 50% reduction by a 2–1 vote. This appeal follows.

## Standard of Review

Our review of the Commission's Final Award is governed by § 287.495.1, which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■■■ "In reviewing a decision of the Commission, we examine the whole record to determine if it contains sufficient com-

---

1. Unless otherwise indicated, statutory references are to the RSMo 2000 as updated through the 2011 Cumulative Supplement.

petent and substantial evidence to support the award, that is, whether the award is contrary to the overwhelming weight of the evidence." *Lawrence v. Anheuser Busch Cos., Inc.*, 310 S.W.3d 248, 250 (Mo. App. E.D.2010). "[W]e review the findings of the Commission and not those of the ALJ." *Id.* "When, as here, the Commission affirms or adopts the findings of the ALJ, we review the decision and findings of the ALJ as adopted by the Commission." *Id.* In conducting our review, "[w]e defer to the Commission on issues concerning credibility and weight to be given conflicting evidence." *Bailey v. Phelps Cnty. Reg'l Med. Ctr.*, 328 S.W.3d 770, 773 (Mo.App. S.D.2010). We review questions of law *de novo*. *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008); *Noah v. Lindbergh Inv., LLC*, 320 S.W.3d 212, 215 (Mo.App. E.D. 2010).

### Analysis

### I.

Missouri's Workers' Compensation Law provides that,

> [w]here the injury is caused by the failure of the employee to use safety devices where provided by the employer, or from the employee's failure to obey any reasonable rule adopted by the employer for the safety of employees, the compensation and death benefit provided for herein shall be reduced at least twenty-five but not more than fifty percent; provided, that it is shown that the employee had actual knowledge of the rule so adopted by the employer; and provided, further, that the employer had, prior to the injury, made a reasonable effort to cause his or her employees to use the safety device or devices and to obey or follow the rule so adopted for the safety of the employees.

§ 287.120.5. "The burden of establishing any affirmative defense is on the employer.... In asserting any claim or defense based on a factual proposition, the party asserting such claim or defense must establish that such proposition is more likely to be true than not true." § 287.808.

■ With respect to claimed safety-rule violations, the employer must establish the following elements to satisfy its burden under § 287.120.5:

1. that the employer adopted a reasonable rule for the safety of employees;

2. that the injury was caused by the failure of the employee to obey the safety rule;

3. that the employee had actual knowledge of the rule; and

4. that prior to the injury the employer had made a reasonable effort to cause his or her employees to obey the safety rule.

Carver contends that the Commission erred in reducing his award because the record does not contain substantial and competent evidence to support the Commission's findings that Delta had proven the elements required to justify a reduction under § 287.120.5. The ALJ's relevant findings, adopted by the Commission, state:

> A number of witnesses testified about the "3 point contact rule" requiring employees to maintain 3 points of contact at all times while climbing a ladder. Transporting materials up a ladder is virtually impossible within the confines of this safety rule.

> Carver testified that he knowingly violated a safety rule by engaging in the activity that allegedly caused his back injury on October 1, 2007. He acknowledged that roofers are never supposed to carry materials up a ladder. Multiple witnesses testified regarding the 3 point contact rule. Nevertheless, Carver testified that he knew he was going to

violate this safety rule before he began working on October 1, 2007 and made a conscious decision to do so.

. . . .

. . . In this case, Carver was the foreman on his project and was solely responsible for ensuring that all safety rules were followed. The Federal Reserve project Carver was working on was extremely safety-oriented and many efforts were made to ensure that safety rules were followed. The materials were provided to Carver to make it possible to comply with the safety rule at issue in this case. Nevertheless, Carver went to work on the morning of October 1, 2007 with the intention and plan to violate the 3 point contact rule. I find that a willful violation such as this certainly justifies a maximum reduction in compensation under § 287.120.5.

■ We conclude that the Commission's findings are insufficient to permit us to review Carver's sufficiency-of-the-evidence claim. As we recently explained,

Section 287.460.1 mandates that an award in a contested workers' compensation case be accompanied by findings of fact and conclusions of law. The Missouri Supreme Court has declared that such statutory requirements "contemplate an unequivocal affirmative finding" as to what the pertinent facts are. *Michler v. Krey Packing Co.*, 363 Mo. 707, 253 S.W.2d 136, 142 (1952).

The factual findings are necessary so that we can know what a decision means before the duty becomes ours to say whether it is right or wrong. The findings should be designed to show whether the basis of the decision was an issue of fact or a question of law. Without factual findings, it can be very difficult to ascertain why the Commission ruled as it did so that we can perform our duty of review under section 287.495.

*Stegman v. Grand River Reg'l Ambulance Dist.*, 274 S.W.3d 529, 533–34 (Mo.App. W.D.2008) (other citations and internal quotation marks omitted). "[T]he commission's findings and conclusions are essential to appellate review." *Mader v. Rawlings Sporting Goods, Inc.*, 73 S.W.3d 83, 84–85 (Mo.App. S.D.2002); *see also, e.g., Spencer v. Sac Osage Elec. Co-op., Inc.*, 302 S.W.3d 792, 801–02 (Mo.App. W.D. 2010); *Martinez v. Nationwide Paper*, 168 S.W.3d 566, 570–71 (Mo.App. S.D.2005); *Brown v. Sunshine Chevrolet GEO, Inc.*, 27 S.W.3d 880, 885 (Mo.App. S.D.2000); *Parrott v. HQ, Inc.*, 907 S.W.2d 236, 244–45 (Mo.App. S.D.1995).

An agency needs to provide the "basic findings" upon which its decision rests. "The basic findings are those on which the ultimate finding rests; the basic findings are more detailed than the ultimate finding but less detailed than a summary of the evidence." Although detailed summaries of the facts are not required in an agency's order and report, "the findings should be sufficient to demonstrate how the controlling issues have been decided."

*State ex rel. Laclede Gas Co. v. Pub. Serv. Comm'n,* 103 S.W.3d 813, 818 (Mo.App. W.D.2003) (quoting *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n,* 24 S.W.3d 243, 246 (Mo.App. W.D.2000)).

One of Carver's primary arguments on appeal is that the evidence was insufficient to establish that Delta engaged in reasonable efforts to cause employees to follow the three-point rule. The evidence concerning Delta's efforts to enforce compliance with the three-point rule is, at best, controverted. While Delta's owner, Danny Boyle, testified that "[n]ormally our guys are trained . . . [that] the only thing that should be carried on a ladder is the person himself," he then testified that employees

violate that rule, apparently with some frequency:

Q. Does that mean nobody ever carries anything?

A. Not at all. Guys tend to do things wrong all the time.

Q. And that's what—

A. I'm just being truthful.

Q. Sure. It happens. It's faster to carry it up sometimes?

A. Yes.

Q. Because you're trying to finish a job and get something done, you may carry something up a ladder as opposed to using the beam?

A. Yes.

Q. Or the pulley?

A. Yes.

Notably, although Boyle was apparently aware of multiple instances in which employees had failed to follow the three-point rule, he provided no testimony as to any discipline imposed on noncompliant employees. Delta's Brief acknowledges this gap in Boyle's testimony, arguing that "[f]rom the record, it cannot even be determined the situations when such ladder safety procedures were not followed, the number of times this may have occurred, who was responsible, and whether the offending employee was warned, disciplined, or otherwise instructed not to take that action again." Resp. Br. at 26.[2]

One of Carver's co-employees, Christopher Freman, testified that, consistent with Delta's three-point rule, an employee could carry something on their shoulder in ascending a ladder, although in that event, "[y]ou would have to take one step at a time." Tr. 233:17–25. Later, Freman testified:

A. Most of the time they indicate that you use a ladder wheel[, a pulley device]. With a ladder wheel, it eliminates a person carrying up the ladder. But nine times out of ten, a person, when they are in a hurry to get the job done, they would forget the ladder wheel and they would have to carry it up if they didn't have a ladder wheel provided.

Q. And that's what Delta Innovative expects from you?

A. Correct.

Q. And that's been your experience throughout your time with Delta Innovative?[3]

A. Correct.

Tr. 236:22–237:2.

For his part, Carver testified that the method he used on October 1, 2007 was commonly used in situations like the one he was facing, and that carrying the roofing material up the ladder "was the only option for me at the time." Tr. 66:13. Indeed, Carver testified that he had carried additional rolls of roofing materials to the same location "on a couple days previous to that." Tr. 93:25–94:1.

While there may be additional evidence in the record which is contrary to this testimony, and would support a finding of "reasonable effort," the evidence described above suggests that employees frequently did not comply with the three-point rule when the circumstances demanded it, and that Delta's owner was aware of this fact; moreover, Delta's owner did not testify the he took any steps to discipline employees who violated the rule. Whether Delta engaged in the necessary "reasonable effort" was a disputed factual issue. Despite the

---

**2.** This argument, *by Delta*, is notable, given that *it* bears the burden of establishing that it "made a reasonable effort to cause [its] employees ... to obey or follow the [three-point] rule." § 287.120.5.

**3.** Freman testified that he had worked for Delta for "[r]oughly four to five years." Tr. 231:12.

existence of this disputed issue, the ALJ's Award contains only the statement that "many efforts were made to ensure that safety rules were followed." This is in essence only a restatement of the statutory "reasonable effort" standard, rather than a statement of the "basic facts" which establish that the statutory standard was satisfied on the facts of this case. In addition, the Award's generic reference to compliance with "safety rules" leaves doubt whether the ALJ was referring to Delta's safety training generally, or its efforts to enforce compliance with the three-point rule, in particular.

Determining the actual basis of the Commission's decision is also complicated by the fact that evidence was introduced before the ALJ concerning *J.E. Dunn's* safety rules, and *J.E. Dunn's* efforts to instruct subcontractors' employees about the safety rules applicable at the Federal Reserve project. In arguing that there was sufficient competent evidence to establish its "reasonable efforts," Delta refers to some of this evidence of safety training conducted by J.E. Dunn. Yet, Delta stipulated during the Commission proceedings that *it* was the relevant "employer" in this case, and its briefing on appeal acknowledges that it is *Delta's* three-point rule, not any J.E. Dunn rule addressing similar issues, that is relevant to the application of § 287.120.5 in this case. From the Commission's decision, it is impossible to know whether the Commission relied, in whole or in part, on the evidence of J.E. Dunn's safety rules or safety training and, if so, the factual and legal justification for that reliance.[4]

Given that there was substantial evidence in the record which would support a contrary conclusion, the Commission was required to make explicit factual findings concerning the "basic facts" which support its determination that Delta "made a reasonable effort to cause [its] employees . . . to obey or follow the [three-point] rule." Without such findings, we cannot meaningfully determine whether the Commission's ultimate conclusion on this issue was supported by substantial and competent evidence. For this reason, we must remand the case to the Commission, for the entry of more specific findings addressing the facts necessary to support a reduction under § 287.120.5.

■■■■ Although not raised by the parties, we also note that the Commission's decision fails to contain any findings supporting the conclusion that "the injury [was] caused by . . . the employee's failure to obey any reasonable [safety] rule." We recognize that the Commission's decision finds that Carver was injured *while* engaged in conduct which the Commission found violated the three-point rule. That is insufficient by itself, however. Section 287.120.5 requires that the employer establish that violation of a safety rule *caused* the employee's injury. "Under § 287.120.5, there must be a causal connection between the violation of the employer's safety rule and the employee's injury." *Thompson v. ICI Am. Holding,* 347 S.W.3d 624, 630 (Mo.App. W.D.2011) (citation and internal quotation marks omitted). *Thompson* referenced principles of proximate causation to determine whether the necessary causal connection had been established, *id.* at 631 (quoting *Hensley v. Jackson County,* 227 S.W.3d 491, 496 (Mo. banc 2007)), and found that a

---

4. We recognize that § 287.040 deems a general contractor to be an "employer" of its subcontractor's employees, at least for certain purposes. Neither Delta nor the Commission have suggested that this statute is relevant here, however, and Delta's appellate arguments presuppose that Delta is the only relevant "employer" for purposes of applying § 287.120.5.

causal connection had been established where the purpose of the rule at issue in that case was to prevent "precisely the situation which occurred here." *Id.* at 630.

Here, the purpose of the three-point rule may well have been to prevent an employee from falling, or from dropping items from a ladder. In this case, however, Carver injured his back because of the burden of carrying a large load up the ladder; his injury did not result from a fall, or from items being dropped from a ladder. It is also unclear whether Carver's injury occurred because he was carrying the roofing material *while climbing a ladder;* from all that appears, Carver may have been subject to the same mechanics of injury while carrying the roll across a level surface to the ladder. Although his injury would apparently not have occurred "but for" Carver carrying the load up the ladder, it is not clear that this is the sort of injury that the three-point rule was adopted to prevent, and whether Carver's violation of the three-point rule bore a sufficient causal connection to his injury. That issue remains open for further consideration on remand.

## II.

Carver next argues that the provision in § 287.120.5 reducing an employee's workers' compensation award violates the Missouri Constitution. We disagree.

 "Pursuant to article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a statute." *White v. White,* 293 S.W.3d 1, 24 (Mo.App. W.D.2009) (quoting *Ahern v. P & H, LLC,* 254 S.W.3d 129, 134 (Mo.App. E.D.2008)). "However, a party's mere assertion of unconstitutionality does not deprive this Court of jurisdiction." *Id.* "When a par-

ty's claim is not real and substantial, but, instead, merely colorable, our review is proper." *Id.* "In determining whether a constitutional claim is real and substantial or merely colorable, this Court makes a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement." *Id.* (citing *Mo. Highway & Transp. Comm'n v. Merritt,* 204 S.W.3d 278, 285 (Mo.App. E.D.2006)). Here, we conclude that Carver's constitutional claims do not involve "fair doubt" or "reasonable room for disagreement," and thus, that those claims are merely colorable. We accordingly have jurisdiction to decide them.

 Carver first argues that the disparity between the twenty-five to fifty percent reduction applicable to employees under § 287.120.5, compared to the fifteen percent increase applicable to employers under § 287.120.4, violates his right to equal protection of the laws, because the disparity is not rationally related to any legitimate state interest. We recently rejected this same argument in *Thompson,* where we concluded that, because "employers and employees are not similarly situated at the time §§ 287.120.4 and .5 are applied," "it was not irrational for the legislature to have decided to penalize employers at a lower rate." 347 S.W.3d at 635–36.[5] We reject Carver's equal protection argument for the reasons stated in the *Thompson* case.

 Carver also argues that § 287.120.5 is unconstitutional because the statute is vague and allows arbitrary and discriminatory enforcement in that it "fails to specify any criteria, standard, principle or other means of determining what per-

---

5. The Missouri Supreme Court denied transfer in *Thompson* on October 4, 2011. No. SC92008.

centage the fact finder should actually apply."

"As the party challenging the constitutionality of the statute, [Carver] bears the burden of proving the statute unconstitutional. [Carver] must overcome the presumption of constitutionality by showing that the statute clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *State ex rel. Zobel v. Burrell,* 167 S.W.3d 688, 692 (Mo. banc 2005) (citation and internal quotation marks omitted). Here, Carver has failed to establish that § 287.120.5 unconstitutionally allows for arbitrary and discriminatory enforcement. Section 287.120.5 provides the ALJ and the Labor and Industrial Relations Commission "the discretion necessary to evaluate the innumerable scenarios" under which an injury is caused by an employee's failure to use a safety device or follow a reasonable rule adopted by the employer for the safety of the employee. *Zobel,* 167 S.W.3d at 692–93.[6] When assessing the amount of the reduction, § 287.120.5 allows the factfinder to take into account such factors as the degree of effort the employer made to cause employee compliance; the extent of the employee's knowledge of the safety device or rule; the causal connection between the injury and the rule violation; and the willfulness of any violation. An ALJ's decision addressing such factors is subject to review both by the Commission, and by this Court. Carver and Delta had the opportunity to address these factors before the ALJ, and on review. Thus, this is not a case where the statute fails to provide any guidance as to the factors the factfinder should take into account when determining the amount of the reduction, or denies affected parties the opportunity to state their positions as to the amount of any reduction justified on the facts of a particular case.

Finally, Carver contends that § 287.120.5 "requires the fact finder to attempt to read a logical meaning into the statute from language that is not present—which is exactly what § 287.800.1 strictly and unequivocally forbids." Section 287.800.1 provides that "[a]dministrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and any reviewing courts shall construe the provisions of this chapter strictly." As we explained in *Robinson v. Hooker,* 323 S.W.3d 418 (Mo.App. W.D.2010), "[s]trict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms. The operation of the statute must be confined to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter. A strict construction of a statute presumes nothing that is not expressed." *Id.* at 423 (citations and internal quotations omitted).

Here, § 287.120.5 does not require an ALJ, the Commission, or this Court to read any additional provisions into the statute in order to impose a reduction on an employee's workers' compensation award. Instead, § 287.120.5's plain and unambiguous terms provide that a compensation reduction can be assessed against an employee when specified conditions are met; the statute also plainly and

---

6. *Zobel* concluded that the statute at issue in that case, § 578.018, "employs the sufficiently clear terms of 'animal abuse' and 'animal neglect' to justify impoundment, requires a hearing for immediate disposition of the animals, and permits an owner to prevent the disposition of an impounded animal. What the statute does is grant the circuit courts the discretion necessary to evaluate the innumerable scenarios under which an animal abuse or neglect case may arise." 167 S.W.3d at 692–93.

unambiguously specifies the range of the reduction which may be imposed. There is nothing ambiguous about § 287.120.5. Carver's real complaint is that the statute provides the factfinder with discretion to assess a reduction within the statutory range, based on the factfinder's assessment of the relevant circumstances of a particular case. "Strict construction" does not prohibit a factfinder from exercising the discretion which § 287.120.5 plainly affords it.

### Conclusion

We reject Carver's arguments that § 287.120.5 is unconstitutional. We nevertheless reverse the Commission's Final Award Allowing Compensation to the extent that it imposed a 50% reduction on Carver's award under § 287.120.5, and remand the case to the Commission for the issuance of further factual findings concerning whether Delta proved that a reduction is justified in this case.[7]

All concur.

---

7. Because Delta was given a full opportunity in the prior hearing to present evidence to satisfy its burden of proving that a reduction was justified under § 287.120.5, we anticipate that the Commission will issue supplemental findings of fact based on the existing record.