

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD76647 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | April 22, 2014 |
| STEPHEN D. WRIGHT, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Macon County, Missouri
The Honorable Frederick P. Tucker, Judge**

**Before Division One:** Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

The State appeals from a judgment purportedly dismissing its information against Stephen Wright. The State contends that the trial court erred in dismissing the information because the information sufficiently states and apprises Wright of the essential elements of the charged offenses related to imitation controlled substances. Wright claims that the trial court correctly dismissed the information because his conduct does not come within the purview of the imitation controlled substance statutes. Because we are unable to discern exactly what the trial court's ruling was, or in fact, whether a final judgment was entered, the appeal is dismissed.

**Factual and Procedural Background**

Stephen Wright was charged by information with one count of delivering an imitation controlled substance in violation of section 195.242,[1] one count of possessing drug paraphernalia (with the intent to use it while ingesting an imitation controlled substance) in violation of section 195.233, and one count of promoting the sale of an imitation controlled substance in violation of section 195.244. More specifically, in Count I, Wright was charged with delivering to Travis Lovett an imitation controlled substance, described as "a kilogram of green plant material in plastic packaging, which appeared or was represented to be marijuana, a controlled substance, knowing that it was an imitation controlled substance." In Count II, he was charged with possession of drug paraphernalia by "possess[ing] pipes, which were drug paraphernalia, knowing of their presence and illegal nature, with intent to use them to introduce an imitation controlled substance into the human body." And in Count III, he was charged with promoting the sale of an imitation controlled substance by "knowingly plac[ing] an advertisement or solicitation on a website to promote the distribution of an imitation controlled substance, 'Sedation Incense.'"

Wright filed a motion to dismiss the information, raising two grounds in support: (1) as to all three counts, he claimed that section 195.010(21) (the definition of imitation controlled substance) was void for vagueness, as applied, in that the statute failed to provide Wright with fair notice that his conduct was illegal; and (2) alternatively, he claimed that the information was insufficient to charge him with a crime: as to Count I (delivery of an imitation controlled substance), because he never represented the substance to be marijuana, which he claims was the conduct the statute was designed to prohibit; and as to Count III (promoting the sale of an

---

[1] All statutory references are to Missouri Revised Statutes (2000), as updated through the 2010 Cumulative Supplement, unless otherwise noted.

imitation controlled substance), because the website on which Wright promoted the sale of his "Sedation Incense" did not constitute the kind of publication or advertisement contemplated by the statute.

In accordance with an agreement between the parties (the parameters of which are unclear), the trial court entered findings of fact and conclusions of law on Wright's motion, rather than simply granting or denying it. The judgment contained the following factual findings:[2]

On January 6, 2011, two Macon police officers responded to a 911 call regarding an alleged burglary in progress in an upstairs apartment of a building near Macon City Hall.[3] When the officers arrived, they discovered that the main door to the apartment was open, but a glass storm door was closed. The officers observed three men (one of whom was Wright) inside, all looking at a computer screen; Wright and another man (Travis Lovett) were smoking from glass pipes or water bongs.[4] The substance they were smoking had the appearance of "bad marijuana." When the officers knocked on the storm door, Wright and Lovett began looking very nervous and attempted to hide the pipes behind their backs; Wright stated, "oh shit." Wright then answered the door while Lovett moved to a back room.

When Wright opened the door, the officers detected an odor similar to that of marijuana. One officer sought permission to enter the apartment, and Wright indicated that he preferred to speak outside. At that point, the officer had all three men step outside. Wright and Lovett

---

[2] It is unclear to us what the exact source for these factual findings is. At oral argument, there were indications that the facts came from the preliminary hearing and were possibly the result of a stipulation between the State and Wright for purposes of the motion to dismiss. There is no transcript or written stipulation in the record on appeal to support either of these assertions.

[3] The alleged burglary was apparently a misunderstanding by the 911 caller, who did not know that the men in the upstairs apartment also owned the store in the lower level and were simply trying to get the lower door to latch.

[4] At the time, Wright was on probation for a prior conviction of possessing drug paraphernalia. Consequently, he was asked for a urine sample and directed to contact his probation officer.

identified themselves and consented to pat-down searches, but nothing of evidentiary value was found during these searches. The officer then asked to speak with Wright alone.

The officer advised Wright of his *Miranda* warnings, and Wright agreed to speak with him. The officer indicated that he had observed Wright smoking what appeared to be marijuana. Wright told the officer that it was not marijuana; it was "incense" and "a legal product." The officer asked why Wright had attempted to conceal the pipe if the substance he was smoking was legal, and Wright responded that he did so because smoking incense was "not socially acceptable."

The officer then sought consent to search the apartment, and Wright agreed, both orally and in writing. The officers seized the pipes that they had observed Wright and Lovett using. Wright showed the officers the packaging for the substance they had been smoking; it was labeled as "Sedation Blueberry."

In a large bedroom closet, there were individual storage totes containing several plastic Ziploc packages of "green plant material" that was similar in appearance to marijuana and adorned with homemade labels, stating "4 grams." On the closet floor, there were two large totes and one medium-sized tote; the medium-sized tote contained two digital scales, numerous baggies and labels, a measuring cup, and more green plant material. One of the large totes contained more green plant material, and the other contained seven individually packaged bags that were each labeled as containing "1 pound" of the green plant material. The officers found eight pills of a generic form of Klonopin, a Schedule IV controlled substance, in Wright's top dresser drawer, but Wright was unable to produce any prescription or prescription packaging for the pills.

4

Wright advised the officers that he and Lovett manufactured the "incense" they were smoking by purchasing large quantities of it from the internet and then adding their own chemicals before weighing and packaging it for sale. Wright further indicated that people typically purchased the "incense" in order to smoke it, because it produces an effect similar to marijuana, but it does not last as long. In fact, Wright indicated that he did not know anyone who purchased the substance for purposes other than smoking it. Despite the product's intended use, Wright stated that he and Lovett attached labels indicating that the product was "not for human consumption and cannot be purchased by anyone under the age of 18." When asked why they would be smoking something labeled, "not for human consumption," Wright responded, "That's just a suggestion, not a law." Wright also acknowledged that people who bought "Sedation" frequently provided it to children under the age of 18, but he claimed that that was not his responsibility.

He further indicated that the value of the product seized by the officers was approximately $4,000, and he and Lovett were hoping to earn approximately $50,000 in one year from sales in a store beneath their apartment, named "Smell Goodz." Wright described the product as "the next best thing since prohibition." Wright admitted that he had recently sold to Lovett "one kilo" of the substance for purposes of resale. According to one of the officers, the substance was similar in appearance to marijuana, the packaging was similar to that used for the distribution of illegal substances, and the prices were similar to those charged in the sale of marijuana.

The officers also viewed the computer screen they saw the men looking at when the officers arrived. The screen displayed a business website, offering "Sedation Incense" for sale in increments of grams and kilograms. The website advertised "Sedation" as "an alternative to K-

2" and suggested that it was the equivalent of "legalized marijuana."[5]  The website was created by a friend of Wright's who intentionally included hidden search words, such as "marijuana" and "smoke."

The officers sought, obtained, and executed a search warrant on the business, "Smell Goodz," located beneath Wright's apartment.[6]  Pursuant to the search, officers seized the following:  Ziploc baggies containing a green leafy substance labeled "Sedation," with various flavors or scents, bearing labels indicating contents of "3 grams," "4 grams," "10 grams," or "1 pound"; plastic Ziploc baggies for packaging; scales; a spray bottle; "bath powder"; items labeled "Flavoring" and "Oils"; cash from both the register and a table in the middle of the room; receipts; t-shirts containing drug-related messages; a "lab analysis sheet"; and a desktop computer.

On July 10, 2013, the trial court entered its "Findings of Fact, Conclusions of Law, and Judgment."  The trial court began its purported judgment by stating that "Wright has filed a Motion to Dismiss . . . arguing that the statute should not apply to Defendants' conduct."  The trial court then set forth its factual findings and noted that the parties were "unable to find any Missouri appellate decisions addressing the *sufficiency of the evidence* in situations where a defendant is alleged to have possessed or sold an item knowing that it was not a controlled substance, but claiming that it was 'similar' to a controlled substance in its effects when used." (Emphasis added.)

---

[5] Wright's motion to dismiss claims that the "Sedation Incense" was actually a substance known as JWH-250, a "synthetic cannabinoid."  While current Missouri law expressly prohibits the possession of synthetic cannabinoids, specifically JWH-250, the law in effect at the time of the search was less specific.  *See* § 195.017.2(4)(*ll*)d(iii), RSMo Cum. Supp. 2011.

[6] Lovett indicated that he owned both the Macon "Smell Goodz" and another "Smell Goodz" located in Brookfield, Missouri.

6

The trial court further noted that "[c]ases concerning the sufficiency of the evidence in matters involving imitation controlled substances have uniformly involved situations where the defendant was alleged to have made 'direct representations' that the item in question was a controlled substance," or "where a defendant had engaged in multiple drug sales to undercover agents and one of those sales involved items which were later determined not to involve an actual controlled substance." After acknowledging the types of cases in which imitation controlled substance charges typically arise, the trial court found that "[t]here is no evidence in this case that either defendant told anyone that the material in question was marijuana, or that either defendant had previously sold marijuana." The trial court concluded the purported judgment by stating, "It is hoped that an appellate decision will help clear up this area of law. So Ordered[.]" The trial court never expressly stated in the judgment what relief was being granted, nor did it specifically identify whether it was dismissing none, one or all counts of the information. The State appeals.

## Analysis[7]

The procedural posture of this case is unclear. The judgment is unclear. The arguments are unclear. In fact, the only thing that is clear is the alleged underlying facts, and those are largely irrelevant to a motion to dismiss and unsupported by the record provided on appeal. In short, we find ourselves simply unable to determine what exactly the court did or how it reached its resolution, and that effectively precludes appellate review.

By way of explanation, we observe first that the judgment fails to indicate what relief is being granted. At the judgment's conclusion, the trial court simply states, "So ordered[.]" And,

_____

[7] Contemporaneous with the issuance of this opinion, this court also issued an opinion in *State v. Lovett*, WD76646. Lovett is the individual to whom Wright delivered the alleged imitation controlled substance. Lovett was charged with possession of an imitation controlled substance and possession of drug paraphernalia. That case addresses substantially similar issues on appeal. Portions of the analysis in this opinion are taken from this court's opinion in *State v. Lovett* without attribution.

7

although the judgment refers to Wright's motion to dismiss and both parties treat the judgment as granting that motion, nothing in the judgment expressly states or indicates that the trial court is granting such relief. Moreover, even if we assume, *arguendo*, that the judgment granted Wright's motion to dismiss, we are unable to ascertain exactly what the judgment actually dismissed. The information charged Wright with three counts: (1) delivering an imitation controlled substance, (2) possessing drug paraphernalia (with the intent to use it while ingesting an imitation controlled substance), and (3) promoting the sale of an imitation controlled substance. Wright requested the dismissal of all three counts, but the motion focuses primarily on the delivery of an imitation controlled substance count. Similarly, the trial court's judgment and the parties' briefing discuss only the delivery of an imitation controlled substance count.[8] Thus, there is no indication in the record whether the court intended to dismiss all counts or just the count charging delivery of an imitation controlled substance.

Adding to the confusion, the State contends in its jurisdictional statement that this appeal "is authorized by § 547.210 and § 547.200, RSMo 2000, which provides for an interlocutory appeal from any order which results in an information being judged insufficient." Later in its brief, however, the State correctly asserts that it "may only pursue an interlocutory appeal from the four categories of cases set forth in § 547.200.1, or an appeal lies from final judgments and orders" and that the "range and types of final judgments from which the State may appeal is significantly broader." Thus, it is unclear whether the State is asking us to treat this appeal as interlocutory or an appeal from a final judgment.

---

[8] In a footnote, the trial court does mention that Wright was also charged with the misdemeanor offenses of promoting the sale of an imitation controlled substance and possession of drug paraphernalia.

Section 547.200.1 sets forth four circumstances under which the State has the authority to seek an interlocutory appeal,[9] none of which apply in this case. Accordingly, for the trial court's judgment to be appealable, it must be final. *State v. Burns*, 994 S.W.2d 941, 942 (Mo. banc 1999). The State, however, fails to explain how the trial court's purported judgment is final for purposes of this appeal. Instead, it merely relies upon the fact that this Court has previously determined that the State had the right to appeal from judgments dismissing an indictment or information on grounds that the acts charged do not constitute a crime, citing *State v. Rousseau*, 34 S.W.3d 254, 259 (Mo. App. W.D. 2000), and *State v. Smothers*, 297 S.W.3d 626 (Mo. App. W.D. 2009). In both cases, however, we were able to determine that the dismissals constituted final judgments. *Rousseau*, 34 S.W.3d at 259 (finding the State could bring the appeal under section 547.200.2 because the pre-trial dismissal of all three counts in the defendant's indictment would not result in double jeopardy); *Smothers*, 297 S.W.3d at 631-32 (finding the dismissal of a two-count information constituted a final, appealable judgment because it had the practical effect of terminating the litigation as charged by the State). In the instant appeal, we are unable to definitively say that the judgment is final.

As noted *supra*, it is unclear whether the trial court dismissed all counts of the information or only one. Missouri courts have held that judgments resulting in the dismissal of all counts charged in an information or indictment are final judgments from which the State can appeal. *See State v. Brown*, 140 S.W.3d 51, 53 (Mo. banc 2004) (indicating a judgment was final for purpose of a criminal appeal when the trial court's judgment dismissed all counts in the

---

[9] Section 547.200.1 provides:

An appeal may be taken by the state through the prosecuting or circuit attorney from any order or judgment the substantive effect of which results in:
    (1) Quashing an arrest warrant;
    (2) A determination by the court that the accused lacks the mental capacity or fitness to proceed to trial, pursuant to section 552.020;
    (3) Suppressing evidence; or
    (4) Suppressing a confession or admission.

information after finding the statutes controlling the charges to be unconstitutionally vague); *see also State v. Drury*, 358 S.W.3d 158, 161 n.1 (Mo. App. E.D. 2011) (stating that a judgment was final and appealable in that the trial court dismissed all the counts, resulting in the case being dismissed entirely); *State v. Delong*, 348 S.W.3d 866, 868 n.2 (Mo. App. S.D. 2011) (explaining that the State had the right to appeal from the trial court's judgment because it was final in that it resulted in the outright dismissal with prejudice of all pending charges in the case). But since we are unable to discern whether all counts were dismissed, we would necessarily have to determine whether the judgment would be final if it dismissed only the count pertaining to delivery of an imitation controlled substance.

Missouri case law is unclear as to whether the dismissal of some, but not all, counts in a multi-count information or indictment constitutes a final judgment for purposes of a criminal appeal.[10] Our district has yet to rule on the finality issue; nevertheless, in determining whether the State has the right to appeal in this case, we would necessarily have to address the issue.[11] Hence, before we could reach the merits of this appeal, we would be forced to speculate as to what relief the trial court granted. Assuming we were to conclude that the judgment dismissed only one count of the information, we would then have to decide whether a judgment that

_____

[10] *Compare State v. Honeycutt*, 421 S.W.3d 410, 413-14, 414 n.4 (finding the trial court's judgment granting the defendant's motion to dismiss one count of a multi-count indictment was "a final judgment from which the State may appeal" because, even though the dismissal was without prejudice, it was based on a constitutional claim that "had the practical effect of terminating the litigation"), *and State v. March*, 130 S.W.3d 746, 747-48 (Mo. App. E.D. 2004) (holding that the dismissal of the one count charged in a multi-count indictment constituted "a final, appealable judgment [because] it purport[ed] to preclude any further prosecution on that charge"), *with State v. Storer*, 324 S.W.3d 765, 767 (Mo. App. S.D. 2010) (holding that a judgment dismissing some, but not all, counts in a multi-count information did not constitute a final, appealable judgment for purposes of a criminal appeal because the two remaining charges would require "future adjudication" and "further prosecution of the defendant"), *and State v. Stegman*, 2 S.W. 798, 799 (Mo. 1887) (holding that the State's appeal was premature where the trial court dismissed two counts of a three-count indictment).

[11] Although we have not issued a decision on this issue, this Court has cited favorably to *Burns* for the proposition that a judgment in a criminal case is "'final when the trial court enters an order of dismissal or discharge of the defendant prior to trial which has the effect of foreclosing any further prosecution of the defendant *on a particular charge*.'" *State v. Triplett*, 355 S.W.3d 543, 548 (Mo. App. W.D. 2011) (quoting *Burns*, 994 S.W.2d at 942) (emphasis added).

10

dismisses only one count of a three-count information is a final judgment for purposes of appeal, an issue the parties have neither briefed nor argued.

> As a court, we are obliged to remain impartial. We are not permitted to become a witting or unwitting adversary of [a party], fashion a theory we are not certain [the other party] pleaded, search the record on our own for evidence to support that theory and impose liability upon [the first party] without affording it any opportunity to challenge our strange conduct.

*Werdehausen v. Union Electric Co.*, 801 S.W.2d 358, 368 (Mo. App. E.D. 1990).

The judgment not only leaves this Court to speculate as to whether one or all of the counts of the information were dismissed but also raises the possibility that the trial court did not, in fact, dismiss anything. This possibility is raised by the trial court's extensive findings of fact. When ruling on a motion to dismiss premised upon a claim that the charging document failed to charge an offense, the court need not examine evidence outside the four corners of the charging document itself. *See City of Perryville, Mo. v. Larose*, 701 S.W.2d 202, 204 (Mo. App. E.D. 1985) ("In determining the sufficiency of the information, this court must look at it from its four corners, and in its entirety."). Rather, "'[t]he fundamental test of the sufficiency of an information is whether or not it states the essential elements of the offense charged so that the defendant is adequately informed of the charge against him and the final disposition of the charge will constitute a bar to further prosecution for the same offense.'" *State v. Miller*, 372 S.W.3d 455, 467 (Mo. banc 2012) (quoting *State v. Mitchell*, 611 S.W.2d 223 (Mo. banc 1981)). The trial court's reliance on extensive facts, not included in the information, raises the possibility that the trial court attempted to grant something akin to summary judgment in favor of Wright on the criminal charges. But, unlike in civil cases, there is no currently recognized procedural mechanism in Missouri akin to summary judgment in the criminal context.[12]

---

[12] Federal Rule of Criminal Procedure 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." There appears to be a

Because we cannot determine the nature of the "judgment" entered by the trial court or the basis upon which the trial court entered its "judgment," we cannot determine whether there is, in fact, a final and appealable judgment in this case. Thus, it follows that any decision we would make in this case would amount to nothing more than an advisory opinion because we do not know what was decided in the trial court. "[I]t is not this Court's prerogative to offer advisory opinions on hypothetical issues . . . ." *State v. Self*, 155 S.W.3d 756, 761 (Mo. banc 2005); s*ee also State ex inf. Danforth v. Cason*, 507 S.W.2d 405, 418 (Mo. banc 1974) ("[W]e do not render advisory opinions, . . . ."); *State ex rel. Mo. Pub. Serv. Co. v. Elliott*, 434 S.W.2d 532, 536 (Mo. banc 1968) ("[T]he Court does not render advisory opinions."); *Harris v. Consolid. Sch. Dist. No. 8 C, Dunklin Cnty.*, 328 S.W.2d 646, 654 (Mo. banc 1959) ("An advisory decree upon hypothetical facts is improper."). Accordingly, the appeal is dismissed, and the case is remanded to the trial court for further proceedings consistent with this opinion. *State v. Reed*, 770 S.W.2d 517, 521 (Mo. App. E.D. 1989).

_____
Karen King Mitchell, Judge

Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer, Judge, concur.

_____

split in the federal circuits as to how this rule is interpreted. *Compare U.S. v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011) ("Although there is no provision for summary judgment in the Federal Rules of Criminal Procedure, . . . under Rule 12(b)(2) . . . , a district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts.") *with U.S. v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) ("Under Fed.R.Crim.P. 12(b) . . . [,] a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.") and *U.S. v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (Former 5th Cir. 1978) ("It must be remembered that in testing the sufficiency of an indictment, a court must not pierce the pleadings and make a premature resolution of the merits of the allegations."). Federal Rule 12(b)(2) "is substantially similar to Missouri Rule 24.04(b)(1)," *State v. Keeth*, 203 S.W.3d 718, 722 (Mo. App. S.D. 2006), which provides that "[a]ny defense or objection which is capable of determination without trial of the general issue may be raised before trial by motion." Mo. Sup. Ct. Rule 24.04(b)(1) (2013). And, although it appears to be dicta, the Southern District in *Keeth* rejected the notion that Rule 24.04(b)(1) could provide authority for "a motion to dismiss for insufficient evidence." 203 S.W.3d at 722.