

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STEVEN LOERCH, | ) | No. ED107908 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | |
| | ) | Honorable Robert D. Schollmeyer |
| CITY OF UNION, MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED:  April  21, 2020 |

Steven Loerch ("Appellant") appeals from the judgment of the Circuit Court of Franklin County granting the motion for summary judgment filed by the City of Union ("Respondent") on Appellant's claim for disability discrimination in violation of Section 213.055 RSMo.[1]  We dismiss the appeal for lack of a final judgment, and remand the case to the circuit court for further proceedings consistent with this opinion.

### I.  Background

In 1990, Appellant began working for Respondent as a custodian at its City Hall Building ("City Hall").  While he later transferred to different positions as a laborer for Respondent's parks and street departments, he eventually transferred back to the custodian position at City Hall in 2007.  Appellant remained in that position until his employment ended in 2015.

---

[1] All Statutory references are to RSMo. (2016) unless otherwise indicated.

When Appellant returned to the custodian position at City Hall in 2007, his shift began at 5 a.m. Eventually, Respondent's City Administrator Russel Rost ("Rost") changed Appellant's start time to 6 a.m. The job description for Appellant's position listed the "principal duties and responsibilities," including maintain grounds by mowing lawns, trimming shrubs, and raking leaves, and also removing snow and ice from the sidewalk steps and ramp immediately after each snow fall. The job description also described the working environment for the position, stating, ". . . the employee is frequently exposed to extreme summer heat, extreme winter cold, wet and/or humid conditions, and outdoor airborne particles."

In 2013, Appellant began experiencing fatigue, dizziness, and shortness of breath. In October of that year, Appellant saw Dr. Joseph Polizzi ("Dr. Polizzi"), a cardiologist, who diagnosed him with Coronary Artery Disease ("CAD"). Dr. Polizzi also found a 99% blockage in one of Appellant's arteries, so Appellant underwent stent placement surgery and began taking Plavix. After this surgery, Appellant performed his work without incident for the remainder of his employment at City Hall.

The issues that eventually led Appellant to file this case began in 2015. Appellant asked Rost to consider him for a transfer to a Park Laborer 1 position in Respondent's Parks Department. This position required nearly 90% outdoor work, instead of the roughly 10% outdoor work Appellant performed as a custodian at City Hall. In July 2015, Rost informed Appellant that there was an opening in the Parks Department, but said that Appellant would have to pass a physical before he would approve a transfer. On July 20, Appellant met with Respondent's physician, Dr. Enkvetchakul, who told Appellant to go to Dr. Polizzi. Appellant saw Dr. Polizzi on July 22, and Dr. Polizzi told him that he would not authorize Appellant to go into any position where he would be exposed to extreme heat or cold. Dr. Polizzi also told

2

Appellant he believed he could perform most of the duties in his position at City Hall, just not those requiring a high level of physical exertion in the bitter cold or heat. Dr. Polizzi then cleared Appellant to remain in that position. Later that same day, Appellant gave Rost a statement written by Dr. Polizzi, containing his recommendations.

After reading Dr. Polizzi's statement, Rost informed Appellant that he was no longer allowed to perform outside work. Rost also sent a letter to Dr. Polizzi, which Respondent asserts was to seek a clarification of his recommendations. However, Rost was never able to speak directly with Dr. Polizzi, instead speaking with a nurse in Dr. Polizzi's office who informed him that Appellant should not be allowed to shovel snow and that he should wear a mask when the temperature was freezing or below. Soon after this conversation, Rost informed Appellant that he would have to retire, or else his employment would be terminated. Through an attorney, Appellant asked Rost to provide accommodations, including having other employees help him with the duties Rost thought he could not perform, and to allow him to mow in the early morning hours before the temperature became hot. Respondent denied all of Appellant's accommodations, so Appellant decided to retire and go on LAGERS disability and employment benefits. Appellant's employment at Respondent's City Hall ended on August 31, 2015.

Appellant filed a lawsuit against Respondent and Rost on April 4, 2017. Five judges recused before it was eventually assigned to the associate circuit judge who eventually decided the case. Trial was set for April 23, 2019. On August 6, 2018, Respondent filed its motion for summary judgment, which the circuit court denied on November 14 of that year. On April 9, 2019, Appellant voluntarily dismissed all claims against Rost. Prior to trial, Respondent filed motions in limine, the first of which moved that Appellant:

> Be barred from presenting any evidence, testimony, or argument [that] (1)
> hiring  additional employees (or assigning other existing City employees) to perform

those portions of [Appellant's] job that [Appellant] was unable to perform due to the limits placed on him by his physician constitute a 'reasonable accommodation,' or (2) that [Respondent] failed to reasonably accommodate [Appellant].

On April 17, 2019, the circuit court granted this Motion in Limine. Appellant moved that the court reconsider its decision, but the court denied that request.

In light of the circuit court's ruling on this motion in limine, on April 22, 2019, the day before trial was set to begin, Respondent moved the court to reconsider its earlier denial of Respondent's motion for summary judgment. That same day, the court granted Respondent's motion to reconsider, and then granted Respondent's motion for summary judgment. However, the court provided no written explanation or basis for its order, simply noting, "So Ordered" at the bottom of the summary judgment motion.

This appeal follows.

## II. Discussion

Appellant raises one point on appeal in this case. However, prior to reaching the merit of the issue set forth in this case, this Court must determine, *sua sponte*, if there is a final judgment. Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997). Regardless of whether this issue is raised, this Court "must determine its jurisdiction *sua sponte*," meaning this court has "an independent obligation to determine whether it has jurisdiction to hear appeals that come before it. Missouri Bond Co. LLC v. Devore, 580 S.W.3d 653, 656 (Mo. App. E.D 2019) (citing Talbot v. Union Elec., Co., 157 S.W.3d 376, 378 (Mo. App. E.D. 2005)). As a general rule, a party may appeal only from a final judgment. Id. A final judgment is a prerequisite to appellate review. Id. If the circuit court's judgment was not a final judgment, the appeal must be dismissed. Id. Where an appellate court is "unable to determine . . . how [the trial court] reached its resolution," or "the basis on which the trial court entered its judgment" we cannot

4

determine whether there is a final and appealable judgment in the case.  State v. Wright, 431 S.W.3d 526, 531, 534 (Mo. App. W.D. 2014).

In State v. Wright, the Western District of this Court dealt with similar facts, albeit in the context of a motion to dismiss the information in a criminal case.  Id. at 526.  We find that decision instructive to our analysis here.  In Wright, the defendant was charged with various drug counts in violation of Sections 195.242, 195.244, and 195.233.  Id. at 527-28.  Wright filed a motion to dismiss the information, and the trial court purported to grant that motion to dismiss.  Id. at 530.  However, the trial court's purported judgment was unclear as to what precisely the trial court dismissed, if anything, as it merely stated, "it is hoped that an appellate decision will help clear up this area of law.  So ordered."  Id.  The state appealed this decision.  Id.

On appeal, the Western District noted that both parties treated the judgment as granting the motion to dismiss, but held that because the Court could not determine "the basis upon which the trial court entered its judgment, we cannot determine whether there is, in fact, a final and appealable judgment in this case."  Id. at 531, 534.  Further, the Western District determined that any decision it rendered in the case would "amount to nothing more than an advisory opinion . . . ."  Id. at 534.  Accordingly, the Western District dismissed the appeal and remanded the case to the trial court for further proceedings consistent with its opinion.  Id.

Similarly, in this case the circuit court provided no basis for why it was granting Respondent's motion for summary judgment.  The court simply noted, "So ordered" at the bottom of the summary judgment motion, leaving this Court with no indication as to precisely why it granted that relief.  Generally, when the trial court does not specify its reasoning in the order granting summary judgment "we presume that the trial court based its decision on grounds

specified in the movant's motion for summary judgment." Rapp v. Eagle Plumbing, Inc., 440 S.W.3d 519, 522 (Mo. App. E.D. 2014) (citing Central Mo. Elec. Co-op v. Balke, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003)). However, Respondent's motion in this case raised multiple reasons why the court should grant summary judgment, arguing that Appellant could not prove he was legally disabled, or that he could perform the essential functions of his job with a reasonable accommodation. Further, a plaintiff alleging disability discrimination under the Missouri human rights act can show he is legally disabled in three ways: (1) he had an actual disability; (2) the defendant regarded him as having a disability; or (3) he has a record of having a disability. Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 821 (Mo. banc 2007). Appellant argued in response to Respondent's motion that he had an actual disability, which required he show that he: (1) had a "physical or mental impairment," (2) which "substantially limits" one or more major life activities, and (3) which, with or without a reasonable accommodation, does not "substantially interfere" with performing his job. Section 213.010(4).

The circuit court's purported judgment does not address any of these requirements, how Respondent showed there was no genuine issue of material fact as to those requirements, or how Appellant failed to show there was a genuine issue of material fact to any of those requirements. Instead, the purported judgment leaves this Court to speculate as to the basis for the circuit court's entry of summary judgment in favor of Respondent. See Wright, 431 S.W.3d at 534 (holding that because the Appellate court could not determine the basis for the trial court's purported judgment, it could not determine whether there was in fact an appealable final judgment). In Appellant's brief, he is even left to speculate on what basis the court likely granted summary judgment. Thus, this Court is left unable to determine whether there is an

6

appealable final judgment.  See id.  Accordingly, this appeal is dismissed and the case is remanded to the circuit court for further proceedings consistent with this opinion.  See id. (dismissing the appeal and remanding to the trial court).

### III.  Conclusion

This appeal is dismissed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____

ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.

7